Filed 11-26-02
mB

```
1    UNITED STATES DISTRICT COURT:

2    WESTERN DISTRICT OF VIRGINIA, CHARLOTTESVILLE DIVISION

3    *******************************************************
     UNITED STATES
4

5
        -vs-                        Case No.: 02-M-426-1
6

7    JAMES DANIEL BRAY,                    COPY

8
            Defendant.
9    *******************************************************

10            PROCEEDINGS BEFORE THE HONORABLE

11                B. WAUGH CRIGLER, JUDGE

12              10:00 a.m. - 11:30 a.m.

13                 November 21, 2002

14              Charlottesville, Virginia

15

16

17

18

19

20

21

22

23

24

25       REPORTED BY:  Karina L. Chesbrough, Court Reporter
```

Proceedings before the Honorable B. WAUGH

CRIGLER, Judge, taken and transcribed by Karina L.

3   Chesbrough, Court Reporter, Notary Public in and

4   for the Commonwealth of Virginia at large,

5   commencing at 10:00 a.m., November 21, 2002, at

6   the United States District Court, Charlottesville

7   Division, Charlottesville, Virginia.

8                   A P P E A R A N C E S

9   FOR THE UNITED STATES:

10       Jean Barrett Hudson
         Assistant United States Attorney
11       U.S. ATTORNEY'S OFFICE
         255 West Main Street
12       Room 104
         Charlottesville, Virginia 22901
13

14   FOR THE DEFENDANT:

15       Marvin D. Miller, Esq.
         Attorney at Law
16       1203 Duke Street
         Alexandria, Virginia 22314-3515
17       703.548.5000

18

19

20

21

22

23

24

25

1                          I N D E X

2        WITNESS:

3        LES LAUZIERE

4            Examination by Mr. Miller............10, 43

5            Examination by Ms. Hudson............42

6

7

8

9

10

11

12                          *   *   *   *   *

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Let the record reflect that

2     this is magistrate docket number 02-M-426,

3     U.S. versus James Daniel Bray, who is present

4     in person with his retained counsel,

5     Mr. Miller.  And the Government is

6     represented by Ms. Hudson.  The record should

7     reflect that just the other day I received a

8     letter under cover of November the 19th from

9     Mr. Miller enclosing a motion, but I couldn't

10    tell whether that was an original signature

11    or not and whether Mr. Miller wanted to file

12    the motion in advance or whether he wanted to

13    file it in open court.  But a copy was shown

14    being sent to Ms. Hudson.  And Mr. Miller is

15    tendering to the Court the original motion

16    and a copy of the letter.  So I'll have the

17    clerk file it in open court.

18          MR. MILLER:  Thank you, Your Honor.  I

19    had sent it to Ms. Hudson, I had sent it to

20    Mr. Smith.  I found out this morning they

21    didn't have it.  And he's in Roanoke and I

22    gave Ms. Hudson another copy I brought

23    because I didn't know who was going to get it

24    and who wasn't.  I also brought the original

25    in case you didn't get yours either.

production@cavalier-reporting.com
(Fax) 434.975.5400                     Cavalier Reporting, Inc                www.cavalier-reporting.com
(Direct) 434.293.3300

1          THE COURT:  I didn't.  We only got the

2     copies.

3          MR. MILLER:  All right.  I'm sorry,

4     Your Honor.

5          THE COURT:  Hey, it's all cured.

6          MR. MILLER:  Thank you, Your Honor.

7          MS. HUDSON:  Your Honor, before we

8     begin, Mr. Miller and I had discussed briefly

9     a couple of matters in the hallway before

10    this case was called.  The Government

11    obviously as the Court knows filed a

12    complaint in this case.  There is an

13    Attachment C to the complaint.  The

14    Government would now move to substitute a

15    redacted Attachment C only removing the first

16    name of the minor children who are mentioned

17    in that letter.  And Mr. Miller and I have a

18    joint motion to seal the unredacted version

19    that is attached to the complaint that is --

20         THE COURT:  Is that the version that

21    was the envelope along with the handwritten

22    document?

23         MS. HUDSON:  Yes, sir.  And I have --

24         THE COURT:  Some 15, 20 -- 15 or 17

25    pages?

1          MS. HUDSON:  Yes, sir.  And with the

2     Court's permission, this is the redacted

3     version that we'd ask be made a part of the

4     public record.

5          THE COURT:  Any objection?

6          MR. MILLER:  No, Your Honor.  We -- the

7     sealing of the unredacted is agreeable.  And

8     there's one other point, if we can approach

9     and put that in the record to explain a

10    little bit further the --

11         MS. HUDSON:  Some verbal

12    representations that we would request also be

13    placed under seal in the record.

14         THE COURT:  What I will do is just ask

15    that everybody but the court personnel, my

16    bailiff, and a United States Marshal

17    representative exit the courtroom

18    temporarily.

19         MR. MILLER:  Your Honor, this is so

20    short.

21         THE COURT:  Yeah, but it has to go on

22    the record.

23         MR. MILLER:  Yes, Your Honor.  Okay.

24         MS. HUDSON:  May my case agent stay

25    present as well, Your Honor?

1          THE COURT:  Well, he knows the

2     information.  So everybody else just

3     temporarily go out.  It's going to be less

4     than two minutes.

5          MR. MILLER:  Mr. Dwoskin is counsel for

6     Mr. Bray in state court.

7          MS. HUDSON:  And, Your Honor, Linda

8     Hicks Thomas is also here from the Attorney

9     General's office and is going to be

10    co-counsel.  She is a Special Assistant U.S.

11    Attorney in our office.

12         THE COURT:  So recognized.  And is

13    there any objection to having the probation

14    officer here who's going to be doing all

15    pretrial matters?

16         MR. MILLER:  No.

17         MS. HUDSON:  No, sir.

18         THE COURT:  All right.  There we go.

19    We got two people out.  Everybody else stays

20    in.

21         MR. MILLER:  Sorry, Judge.  For the

22    record -- and the real long matter, if Your

23    Honor pleases, is this.  The individual

24    designated as "A" in quotes is Jessica and

25    the individual designated as "B" is Danielle,

1      just so the record is clear as to who we're

2      dealing with in there.  And the unredacted

3      now under seal should reflect that, but we

4      just want to make sure that the case is on

5      the same page as to who it is.  And we'd ask

6      that that also be put under seal, this one

7      representation be under seal.  And that's all

8      we have, Your Honor.

9          MS. HUDSON:  And would the Court need a

10     written motion and order from the Government

11     to put that in the record?

12         THE COURT:  Well, I think the motion on

13     the record of the case is sufficient.  And

14     what I'm going to direct the clerk is to seal

15     the version that I have under a paper clip to

16     be opened only upon order of the Court and

17     then substitute for that the version that

18     was -- he's going to mark stamped -- he's

19     going to stamp it filed in open court, and

20     I'm going to order that it be substituted for

21     the original that was part of the criminal

22     complaint.

23         MS. HUDSON:  Thank you, Your Honor.

24         THE COURT:  And that's -- yeah.  And

25     that will do it.  Now you can bring everybody

1          back in.  And while they're coming back in,

2          Mr. Miller, do you wish a preliminary hearing

3          today on these matters?

4                    MR. MILLER:  Yes.

5                    THE COURT:  Well, and I take it that

6          they'll be referred to as "A" and "B?"

7                    MS. HUDSON:  Yes, sir.  They are --

8          just for the record as well, and for the

9          Court to note, in the main portion of the

10         affidavit Mr. -- Inspector Lauziere refers to

11         them as minor "A" and minor "B."

12                   THE COURT:  And is there any objection

13         to conducting currently the preliminary

14         examination and the bail, the evidence

15         relating to the Defendant for purposes of

16         bail?

17                   MR. MILLER:  No, not on behalf of the

18         defense, Your Honor.

19                   THE COURT:  I mean, it doesn't keep you

20         from putting on additional -- I'm just doing

21         both proceedings at the same time.  He's

22         requested a bail hearing.

23                   MS. HUDSON:  Could we proceed with the

24         cross examination on the complaint for

25         purposes of the preliminary and then permit

1          the Government to put on evidence immediately

2          after that?

3               THE COURT:  Absolutely.  No problem.

4          But -- 'cause generally what you do is say,

5          well, we rely on the affidavit and then I

6          just force you to tender your witness for

7          cross examination by the defense counsel.

8               MS. HUDSON:  That's what I'd prefer.

9               THE COURT:  Is that what you're doing

10         today?

11              MS. HUDSON:  Yes, sir.

12              THE COURT:  Mr. Lauziere, do you swear

13         or affirm that what you testify to today is

14         truthful under penalty of perjury?

15               L E S   L A U Z I E R E , called as a

16            witness and being duly sworn, testifies as

17            follows:

18              THE COURT:  All right.  You want to

19         take the stand here and be cross examined by

20         Mr. Miller?  All right, Mr. Miller.

21    BY MR. MILLER:

22         Q.   Now, Mr. Lauziere, do you have before

23    you the affidavit which I will assume has been

24    tendered as Government's Exhibit 1?

25         A.   Yes.

1          THE COURT:  It's not an exhibit.  It's

2     been substituted as an -- as the --

3          MR. MILLER:  Proffer.

4          THE COURT:  Right.

5     Q.    Would you please refer to the first

6     paragraph and the last line of it?

7          THE COURT:  That's on Page 17?

8          MR. MILLER:  Page 1 of the affidavit.

9     A.    As a part of this current official

10    duties?

11    Q.    Yes.  And if you'll look at the very

12    last line, last sentence of the first paragraph.

13    A.    As a part?

14    Q.    Yes.  Just look at that, and then my

15    question to you, sir, is how many online

16    enticement cases have you been involved in?

17    A.    I suppose probably 15 or 20, maybe

18    more.

19    Q.    Over how many years?  Over the 26

20    years?

21    A.    Over -- yeah, probably most of those

22    over the last 10.

23         THE COURT:  You know you've got a

24    quizzical look from the United States

25    Attorney when you asked that question 'cause

1        she's questioning how much probable cause

2        that goes to.  Go ahead.

3           MR. MILLER:  Yes, Your Honor.  I think

4        it does go to it because of the preamble to

5        the affidavit by the officer.

6        Q.    Now, turning to paragraph number one on

7  Page 2.

8        A.    Yes, I see it.

9        Q.    Are you aware that the motel room was

10  under surveillance for a period of hours before

11  the officers entered?

12      A.    I don't know for what period of time it

13  was under surveillance.  I know it was under

14  surveillance for a period of time.  I don't know

15  how many -- if it was hours or minutes.  I don't

16  know.

17      Q.    Are you aware that "A" was followed

18  from her home to that location?

19          MS. HUDSON:  Objection, Your Honor.

20          THE COURT:  What's the basis of the

21        objection, Ms. Hudson?

22          MS. HUDSON:  There's nothing regarding

23        the whereabouts or the behavior of minor "A"

24        in paragraph one.  It just seems like he's

25        raising a completely separate issue from

1    anything alleged in the affidavit.

2       THE COURT: I just don't understand

3    where that goes to probable cause whether

4    they watched him or didn't watch him, whether

5    they trailed him or didn't trail him, whether

6    they permitted it to occur or didn't permit

7    it to occur. Where does that go to probable

8    cause?

9       MR. MILLER: It goes to -- the series

10    of questions will determine whether there was

11    enticement or not.

12       MS. HUDSON: We're not here to try the

13    case, Your Honor.

14       MR. MILLER: They made the allegation

15    and you're to determine whether or not

16    there's probable cause. And they've made

17    this as an allegation. Now, if they want to

18    withdraw paragraph one and take it from the

19    Court's consideration, that's fine. If

20    they're going to offer it to the Court as

21    evidence, then we get to cross examine the

22    validity of it. At least that's my

23    understanding of what --

24       THE COURT: You only get to cross

25    examine it to the extent that it can't as a

1          matter of law establish probable cause.

2                MR. MILLER:  Or to the extent that it's

3          not credible as a statement of fact.

4                THE COURT:  As a matter of law.  It

5          would have to be as a matter of law

6          incredible.

7                MR. MILLER:  No.  The Court in a

8          preliminary hearing can determine that as a

9          matter of law it's not relevant to the

10         determination and therefore shouldn't be

11         considered.  The Court can determine based on

12         evidence presented to it that the factual

13         basis is not worthy of consideration.

14               THE COURT:  But I would have to

15         determine that the evidence is not credible

16         as a matter of law, that no reasonable

17         determiner of probable cause could say that

18         that would constitute a basis for probable

19         cause.

20               MR. MILLER:  No, not that it wouldn't

21         determine a basis for it, but that it wasn't

22         credible, therefore shouldn't be considered.

23         If it was true --

24               THE COURT:  You can dance on that pin

25         in the Court of Appeals.  I sustain the

1    objection.

2          MR. MILLER:  The position, Your Honor,

3    so the record is clear -- I'm not trying

4    to --

5          THE COURT:  I'll let you challenge the

6    credibility of the evidence, and if you --

7    I'm going to give you some leeway, but I'm

8    not going to go down the road that you want

9    me to go down.  I think the parameters are

10   clear.  So I will allow you to challenge the

11   credibility of the evidence so long as -- so

12   long as the question before the Court is

13   whether there's any credibility as a matter

14   of law.  Whether I believe this man or not

15   isn't the issue.  It's whether it could be

16   believed by a reasonable person determining

17   probable cause.

18         MR. MILLER:  I think -- and I'll

19   just -- we can lay this to rest.  I think

20   that the Court as the fact finder is

21   obligated to make its own credibility

22   determinations of the evidence not as a

23   matter of law, but as whether or not the

24   Court credits it.  Then if the Court credits

25   it, the Court makes the second determination

1          as to whether or not it supports the

2          proposition for which it's offered.  I think

3          it's a two-step process.

4                  THE COURT:  I'll consider that.  Go

5          ahead.

6          Q.    Now, are you aware that this was not an

7    enticement but was an arranged meeting that had

8    certain involvement of the police in arranging the

9    meeting to take place?

10                 MS. HUDSON:  Objection, Your Honor.

11         He's asking a legal question.

12                 THE COURT:  Sustained.

13                 MR. MILLER:  No, that's a factual

14         question, Your Honor.  Police involvement in

15         setting up the meeting.

16                 MS. HUDSON:  You asked whether it was

17         an enticement.

18                 THE COURT:  I agree.  I sustain the

19         objection.  It's argumentative.

20                 MR. MILLER:  I'll reword it.

21         Q.    Are you aware that the police were

22   involved in setting up the meeting -- local police

23   officers?

24                 MS. HUDSON:  Could we clarify what

25         meeting he's talking about?

1        MR. MILLER:  Paragraph one, 15 February

2    2002.

3        MS. HUDSON:  Objection.  It doesn't go

4    to the probable cause.  Paragraph one deals

5    with the subject of a prior conviction of

6    Mr. Bray's and briefly sets forth those facts

7    for the purpose of identifying that there was

8    a minor "A" who had some past history with

9    Mr. Bray of a criminal nature according to

10   Virginia code and according to his prior

11   conviction.  It has nothing to do with --

12   other than as it is in that context with the

13   current allegations of enticement that have

14   more to do with Attachment C to the

15   affidavit.

16       MR. MILLER:  Your Honor, that's

17   argument.  The affidavit in its own words

18   says what the purpose -- how the meeting came

19   about, and it talks about how the meeting

20   came about.

21       THE COURT:  Answer the question.

22   Q.   Do you know whether or not local law

23   enforcement were involved in setting up this

24   meeting?

25   A.   When you say were involved, I --

1        Q.    In arranging it to take place.

2        A.    I don't believe that, no.

3        Q.    Okay.  Now, are you aware -- your

4    knowledge on this information is garnered from

5    police reports and investigative reports of others

6    that you read?

7        A.    Not totally, no.

8        Q.    Regarding the incidents of 15

9    February 2002 is it based on police reports and

10   incident reports and interviews with officers?

11       A.    Not totally, no.

12       Q.    Were you present?

13       A.    No.

14       Q.    Other than interviews with the officers

15   and police reports since you weren't present, did

16   you have occasion to observe photographs that the

17   police took of the scene right after their entry?

18       A.    No, I did not.

19       Q.    So have you seen any -- and by

20   photographs I will for the record mean also any

21   videos or still photographs.

22            MS. HUDSON:  Objection, Your Honor.

23            MR. MILLER:  Basis of his knowledge,

24        Your Honor, that's what I'm getting to.

25            MS. HUDSON:  Your Honor, I think a

1    question could be asked, but I think the

2    breadth and the detail of this question is

3    objectionable.

4          THE COURT:  Well, the fact that he

5    wants to detail it in that way, he is

6    examining this witness.  I overrule the

7    objection.  Answer the question to the best

8    of your knowledge.

9    A.    I did not see any videotapes.

10   Q.    Did you see any photographs?

11   A.    No, I did not.

12   Q.    Okay.  What is the other source of your

13   information if it's not personal knowledge or

14   based on information from officers, because you

15   indicate that --

16         THE COURT:  Why don't you just ask the

17   question?

18   Q.    Okay.  What is your other basis of

19   information?

20   A.    It's also from the victim's family.

21   It's also from other law enforcement officers.

22   Q.    So law enforcement officers and the --

23   by the family, do you mean the parents of "A?"

24   A.    Yes.

25   Q.    Now, there is mention in the bottom of

1   this paragraph of a seizure of computers and

2   diskettes, et cetera.  Were you involved in that

3   seizure or is that based on records that you

4   reviewed?

5         A.    That seizure relates to the Virginia

6   search warrant that was executed at that time.

7         Q.    Okay.  Now, you work with the -- for

8   the record, you work with the Attorney General's

9   office of the Commonwealth of Virginia?

10        A.    That's correct.

11        Q.    And this warrant to which you make

12  reference is a state search warrant issued by a

13  state circuit court judge or a state magistrate,

14  do you know -- if you know?

15        A.    I believe it was a magistrate.

16        Q.    And was it a magistrate in the

17  jurisdiction in which the motel occurred; isn't

18  that correct?

19              MS. HUDSON:  Your Honor, we will

20         stipulate this was a state case.  Everything

21         about it was a state case.

22              MR. MILLER:  I'm laying a foundation

23         for another proposition.  I need to get the

24         facts.

25              THE COURT:  What's the proposition?

1          MR. MILLER:  I want to establish the

2     facts.

3          THE COURT:  No, what's the --

4          MR. MILLER:  Can we approach the bench

5     so the witness can't hear it?

6          THE COURT:  What's the proposition?  It

7     either has to be a legal matter --

8          MR. MILLER:  It's a legal matter.

9          THE COURT:  Well, just tell me.

10          MR. MILLER:  That the evidence that --

11     to which they make later reference here would

12     not be admissible.

13          THE COURT:  That's not a basis upon

14     which you can challenge it in this court at

15     this time.  The rules are clear.  Objection

16     sustained.

17     Q.     Were you involved in obtaining this

18     state search warrant?

19     A.     No, I was not.

20     Q.     Were you involved in seizing the items

21     that are mentioned in the bottom of this

22     paragraph?

23     A.     Off the state search warrant, no.

24     Q.     Did they come into your possession at a

25     later time?

1      A.    Yes, it did.

2      Q.    And for the record, where is your

3  office?

4      A.    In Richmond.

5      Q.    Okay.  How did they come into your

6  possession?

7          THE COURT:  This is discovery and I'm

8        not going to let you go anymore.  Challenge

9        the probable cause or quit.

10        MR. MILLER:  I am intending to

11        challenge the probable cause.

12        THE COURT:  Yeah, but you're doing it

13        round Robin Hood's barn and I'm just not

14        going to let you go there, Mr. Miller.  It's

15        out of deference to you that I've stayed on

16        task as long as I have.

17      Q.    Now, in February you indicate in

18  paragraph three that you were requested by

19  Detective Garland Mills to provide assistance.  Is

20  that reference to you or is that reference to your

21  office?  In other words, did they say, would you

22  please help us to you individually or was it in

23  reference to your office in a referral?

24      A.    Well, they're one and the same, the

25  office and myself.

1          THE COURT:  Makes no difference.  If

2     you ask another question like that, I'm going

3     to sit you down.

4     Q.     In that request, did they provide you

5  with documents and materials on which you relied

6  in crafting this affidavit?

7     A.     Some of the materials may have been

8  part of it.  I don't know which -- I'd have to

9  look and parse those out.

10     Q.     Did you after that have interviews to

11  which you made reference in your earlier

12  examination?  In other words, did that occur

13  chronologically before or after this time?

14          MS. HUDSON:  Your Honor, I think the

15     agent has already answered that.  He's

16     answered where he got all the information in

17     the case.

18          THE COURT:  And he doesn't even have to

19     answer that except to the extent as showing

20     that they're credible sources.  They don't

21     have to prove credibility of the particular

22     person.  I don't know where this is heading,

23     but it's only going to last another two or

24     three minutes, Mr. Miller.

25     Q.     In paragraph four, you conclude that

1    evidence obtained from Detective Mills disclosed

2    communications, and then you describe it, and you

3    say using electronic mail, America Online

4    Messenger, and e-mail accounts.  That's the

5    conclusion that you give.  What is the factual

6    basis for that conclusion?

7          A.    My examination of that evidence.

8          Q.    When you presented -- did you present

9    this affidavit to the Court for the issuance of

10   the complaint in this case?

11         A.    Yes, I did.

12         Q.    Okay.  And did His Honor have presented

13   the materials that you reviewed for the conclusion

14   in paragraph four at that time?

15         A.    Did I hand him --

16               THE COURT:  You have in front of you

17         the complaint and what was attached to it.

18         You've got what I've got.

19               MR. MILLER:  Okay.  That was the point

20         of the question, Your Honor.

21               THE COURT:  Now, if you're challenging

22         that, that's one thing.  But, Mr. Miller,

23         it's an enigma to me about where you think

24         you're going with this.

25               MR. MILLER:  There's a procedure where

1       there could have been additional testimony

2       recorded in a record not part of this.

3               THE COURT:  That's discovery.  Unless

4       this doesn't show probable cause.

5               MR. MILLER:  This does not show

6       probable cause.

7               THE COURT:  You tell me why.

8               MR. MILLER:  Because under Leon it's a

9       wholly unsupported conclusion and they don't

10      allow it, that's why.  In paragraph four --

11      though there could have been other evidence

12      that could have been presented in another

13      means that might have done that and then I'd

14      need to address that issue.  If there was no

15      other, then that's it for paragraph four.

16      It's a wholly unsupported conclusion.

17              THE COURT:  I don't look at just

18      paragraph four.  I look at the entire

19      complaint and all of the things that were

20      attached to it to determine whether there's

21      probable cause.

22              MR. MILLER:  I understand that, Your

23      Honor, but what I need to deal with is the

24      facts as I get to them in the series to see

25      whether or not there's enough of it that's

1          not permissible that leads to a diminution of

2          the probable cause allegation.

3          Q.    Now, in paragraph five, the information

4    that you provided, is that also information that

5    was your conclusion based on your review of

6    someone else's records?

7          A.    That was based on looking at the e-mail

8    account information obtained from the two

9    different sources.

10         Q.    When looking at that e-mail account

11   information in five and a similar e-mail

12   information in paragraph four, had you obtained

13   that by use of a search warrant?

14         A.    No.    That was voluntarily provided.

15         Q.    And did you review that material

16   yourself or is this something that was reported to

17   you secondhand?

18         A.    I reviewed it.

19         Q.    Paragraph six refers to a federal

20   search warrant in the Eastern District of Virginia

21   for a personal computer, et cetera that was

22   obtained on the 10th of April 2002.  Did you at

23   that time get into the hard drive and uncover the

24   communications that are referenced in this

25   application for a complaint?

1          MS. HUDSON:  Objection, Your Honor.

2          THE COURT:  What's the basis?

3          MS. HUDSON:  I think that goes to

4     discovery.

5          MR. MILLER:  That goes to bail also,

6     Your Honor, as to when he got the

7     information.  Because I don't -- I think that

8     does go to bail.

9          THE COURT:  Why?

10          MR. MILLER:  Because of timeliness and

11     whether -- and risk factors and other issues

12     that come up under the statute, that's why.

13     And so --

14          THE COURT:  You must be looking at

15     different laws than I look at, or you look at

16     them differently than I do.  I just don't

17     know where you're going and where you're

18     coming from.  It's an enigma to me.  I'm

19     giving you some latitude.  Answer the

20     question.

21     Q.    Is that where you uncovered the

22     electronic communications you reference in your

23     affidavit -- pursuant to that search warrant in

24     paragraph six?

25     A.    No.  There were other -- they were

1   coming from two different sources.

2       Q.     Okay.  By that time, did you have the

3   communications that you referenced in your

4   affidavit -- except for the letter that's dated

5   obviously the 30th of August?

6           MS. HUDSON:  Request for clarification.

7       By what time, Your Honor?

8           MR. MILLER:  April the 10th, 2002.

9       Paragraph six, third -- fifth words, top

10      of -- top line.

11          MS. HUDSON:  Same objection from the

12      Government, Your Honor.  I think it goes to

13      discovery.

14          THE COURT:  You're going to have to

15      show me why it's relevant to bail.

16          MR. MILLER:  What did they know and

17      when did they know it is relevant to bail

18      relative to the charges, Your Honor.

19          THE COURT:  I don't get it.  I'm in the

20      zone.  What they knew and when they knew

21      it -- I'm just totally in the ozone when you

22      say that, Mr. Miller.

23          MR. MILLER:  It relates to their

24      assessment of risk.

25          THE COURT:  I could care less about his

1    assessment of risk.  I care about the

2    pretrial services and everything else about

3    his background, all of the things that the

4    Bail Act says.

5         MR. MILLER:  And the Bail Act deals

6    with strength of case as an issue which is an

7    area I'm addressing.  Strength of case is an

8    issue and whether or not they have engaged in

9    flagrantly illegal conduct that affects the

10   strength of their case is an issue that I

11   would like to address.

12        THE COURT:  I've never seen that in any

13   of the cases that I've read in 21 years.

14   Well, the Bail Act hasn't been around for 21

15   years, but I've never seen that.

16        MR. MILLER:  Strength of case is under

17   the statute.

18        THE COURT:  Strength of case is there,

19   but whether something is legal or illegal is

20   not something I'm to consider, and that's

21   statutory.

22        MR. MILLER:  It's not something that

23   you're to consider on the question of

24   admissibility of evidence before you, but it

25   is something the Court's entitled to consider

1          on the issue of strength of case.  And I have

2          had cases where clients have gotten bail on

3          that issue because it was so clear.  And in

4          some cases it wasn't even known to the

5          attorney of the United States.

6                    THE COURT:  I can tell you if it's so

7          clear it would certainly be clear enough to

8          me.  And this is so fuzzy.

9                    MR. MILLER:  It will be when I argue

10         it, but I need to lay the factual predicate

11         for it.

12                   THE COURT:  Go ahead.

13         Q.    Did you at that time have the other

14    communications outside of what you developed from

15    the computer?

16                   THE COURT:  I think this is a ruse.  I

17         really think it's a ruse to get discovery.  I

18         so find, and unless you can ask questions

19         that are more articulate and more directed

20         toward the probable cause that's stated in

21         here, I'm going to cut you off and I'm going

22         to sit you down.  I think it is a design to

23         get information that you're not entitled to

24         get on a probable cause hearing.

25                   MR. MILLER:  Well, Your Honor --

1          THE COURT:  And I'm not criticizing you

2     for trying to do it.  I just think the jig's

3     up.

4          MR. MILLER:  Well, in paragraph seven

5     they talk about a communication dated

6     February 3rd, 2002.  If they had that on

7     April the 10th, that goes to my timeliness

8     issue, which is a factor that under the code

9     I have to argue to the Court on the bail

10    question.

11         THE COURT:  Just ask the simple

12    question.

13    Q.    Did you have that February 3rd

14    communication that you reference in paragraph

15    seven when you obtained the search warrant in

16    April as referenced in paragraph six?

17    A.    I'm not certain.

18    Q.    Did you have it around that time, if

19    not exactly on that date?  I'm not trying to pin

20    you down to a calendar date with some kind of

21    trick, but around that time.

22    A.    I don't know.

23    Q.    Would it be fair to say that you had

24    most of the communications by June of 2002 other

25    than the letter of August the 30th?  I'm excluding

1    that from my question.

2          A.    I don't know if I could say that would

3    be fair to say.

4          Q.    Do you have your notes and your files

5    with you of your investigation?

6          A.    Not all of them.

7          Q.    Do you have some of them?

8          A.    A few of them, yes.

9                MS. HUDSON:  Objection, Your Honor.

10               THE COURT:  He can answer whether he

11         has them.

12               MS. HUDSON:  Yes, sir, and I'm maybe a

13         little premature.

14               THE COURT:  Maybe so.

15         Q.    Do they reflect writings of yours

16    regarding the evidence that's contained in this

17    affidavit?

18               MS. HUDSON:  Objection, Your Honor.

19               THE COURT:  This is totally discovery.

20               MR. MILLER:  5.1, Your Honor, says I'm

21         entitled to it.

22               THE COURT:  Let's go to 5.1.

23               MR. MILLER:  5.1(e).  And it is

24         discovery, 'cause every time you ask a

25         question you discover something you didn't

1        know before -- excuse me, not 5.1(e), 5.1(d),

2        which references Rule 26 and applies Rule 26.

3               THE COURT:  Well, Rule 26 are the

4        statements of the accused.

5               MR. MILLER:  No, sir.

6               THE COURT:  Why don't we go there and

7        read it.

8               MR. MILLER:  Please.  Thank you.

9               THE COURT:  What do you say about that,

10       Ms. Hudson?

11              MS. HUDSON:  I'm just through Paragraph

12       A.  As far as I can see, Paragraph A refers

13       to any statement of the witness.  I don't

14       think that Agent Lauziere's notes with regard

15       to -- in the context of the question that

16       Mr. Miller asks will be covered under that

17       rule.  I think if he had testified in a

18       proceeding under oath --

19              THE COURT:  These are all directed

20       toward a witness who is called and has given

21       a statement at a previous time.  It doesn't

22       have to do with this man's field notes.

23              MR. MILLER:  It is Jenks material

24       applied to trials and Jenks material applied

25       to preliminary hearings.  And if he wrote it

1    and it's his statement, it's a Jenks Act

2    statement.   The Jenks Act is not limited to

3    testimony.   Rule 26 is not limited to

4    testimony.   And Rule 5.1(d) is not limited to

5    testimony and they don't say so and the cases

6    say otherwise.

7         THE COURT:   I was on the committee when

8    this rule was amended at least to that

9    extent.   And my recollection of the

10   discussion of the rules committee was that

11   this dealt with witness statements that would

12   otherwise be producible, that -- not just the

13   Defendant's statements, but witness

14   statements that would be producible either

15   under other provisions of law or the Jenks

16   Act.   And this does not deal with the record

17   of his notes.   They're the statements of any

18   witness that has made a previous statement.

19        MR. MILLER:   No, they -- he's the

20   witness.

21        THE COURT:   Overruled -- I mean I

22   sustain the objection.

23        MR. MILLER:   Just so I make what my

24   position is clear, if I may do that, Your

25   Honor.

1          THE COURT:   If he's got a statement of

2    a witness that he is relying on at this time

3    to -- in these proceedings, that's fine.   But

4    he's establishing the overall basis of

5    probable cause.

6          MR. MILLER:   What he's doing is one

7    thing and whether it's establishing probable

8    cause or testifying at trial is not the issue

9    because the rules apply the procedural

10   entitlement to statements in both contexts.

11   So the question before the trier of fact is

12   not the question before the Court at this

13   point in time.   The question before the Court

14   at this point in time is when a person

15   testifies as a witness, which for the record

16   this agent is doing, then statements by that

17   testifying witness, who is this agent, which

18   would fit the Jenks Act, as the Court just

19   correctly observed, are producible under Rule

20   5.1(d) as they would be under 26.

21         MS. HUDSON:   Can we refer to Paragraph

22   F of Rule 26.2, Your Honor, for the

23   definition of a statement, which includes a

24   written statement made by the witness that is

25   signed or --

1          THE COURT:  Exactly.

2          MS. HUDSON:  -- otherwise adopted or

3     approved, a verbatim recital of an old

4     statement made that is recorded.  And three,

5     a statement however taken where there's a

6     transcription made by a witness to a grand

7     jury.  I don't see how his field notes are

8     covered under that definition.

9          MR. MILLER:  They are covered because

10    they are statements of his that he made and

11    which he signed.

12         MS. HUDSON:  We haven't established

13    that anything was signed, Your Honor.

14         MR. MILLER:  Well, I was cut off in the

15    middle of establishing my foundation.

16         MS. HUDSON:  Because I think that --

17         THE COURT:  I don't think it applies to

18    this kind of statement.  I think it applies

19    exactly to what -- and if you read the

20    committee notes to the rules in 1993, that's

21    exactly when I served on the committee and it

22    was clear that they weren't trying to create

23    something other than an opportunity for the

24    person to get a copy of any statements that

25    were made by a witness in the form -- you

1    know, Paragraph F really defines what a

2    statement of a witness is.  So I sustain the

3    objection.  This is not general discovery.  I

4    sustain the objection.

5         MR. MILLER:  Your Honor, just for the

6    record so that I'm clear -- I'm not trying to

7    fight the Court, but I need to make my point.

8         THE COURT:  First case I've had

9    litigated under -- I mean, if what you say is

10   true, I will say this, that it was totally

11   foreign to the thinking of the committee at

12   the time that the rule was amended, because

13   they didn't intend to open this up for

14   general discovery.  What they wanted to do

15   and clearly did do was to make statements

16   that would otherwise be available as set

17   forth in F available at a preliminary

18   examination so that at least they could be

19   cross examined.  And I think you've gone

20   beyond that.

21        MR. MILLER:  Just for the record, Your

22   Honor, the -- a DEA 6 or an FBI 302 fits

23   Jenks Act statements.  And that's what I'm

24   asking for from this agent.  And then there's

25   another issue that I haven't addressed yet

1          that I'd like to.  But that's what I asked

2          for.

3                    MS. HUDSON:  That's not what Mr. Miller

4          asked for, Your Honor.  I disagree.

5                    THE COURT:  He sure didn't.

6                    MR. MILLER:  I'm asking for his own

7          investigative notes, which is what a DEA 6 or

8          a 302 is.

9                    MS. HUDSON:  Then we disagree with that

10         definition.

11                   THE COURT:  I agree with the Government

12         and disagree with Mr. Miller, except to the

13         extent if he'd asked for those particular

14         things it's a different animal.

15         Q.   Do you have signed reports of

16   interviews with witnesses on which you relied in

17   preparing this affidavit?

18                   MS. HUDSON:  Objection, Your Honor.

19         He's asking about signed reports of

20         interviews of other witnesses.

21                   MR. MILLER:  No, does he have his

22         reports of interviews with witnesses that

23         contain statements of others on which you

24         rely that I would like to have produced for

25         cross examination.

1       THE COURT:  This is discovery.  I

2   sustain the objection.

3       MR. MILLER:  The Court indicated that

4   we would be entitled to certain statements of

5   witnesses under the rule, and that's what I'm

6   asking for.

7       THE COURT:  Let me -- can I tell you

8   the trouble?  I'm going to put it on the

9   record.  You dance around all over with

10  superfluous stuff, and then when you get down

11  to the stuff that really matters, you get the

12  Court in a position of being so pressed to

13  the wall about what you're really trying to

14  do that it can't distinguish the good from

15  the bad.  And I don't think I'm in a position

16  that's different from any other court.  When

17  you can't distinguish whether you're trying

18  to get good stuff that you can get from the

19  bad stuff that you're not supposed to get,

20  oftentimes you don't get anything at all.

21  Now, you've put me in that position,

22  Mr. Miller, and you're a good lawyer, and I'm

23  not criticizing it, except that you've got it

24  in a position that the Court is caught

25  between the rock and the hard place and

1        either you get me out by articulating what

2        you need or you're not going to get anything

3        at all.

4              MR. MILLER:  He has -- or ought to have

5        sworn statements of other witnesses that were

6        referenced in some of these search warrant

7        affidavits that would be producible under

8        what I understood the Court's ruling to be.

9              THE COURT:  Well, the Court's ruling is

10       by the seat of its pants, because all of

11       y'all are flying around taking cheap shots at

12       one another because you don't -- you've got

13       it in such an indirect way that you put the

14       Court off in the na-na land from the very

15       beginning.  Now, look, Mr. Miller.  You

16       either confine yourself to the precision with

17       which these statements are to be, or I'm not

18       going to let you ask the questions.  You can

19       go fishing, but not in this court.

20             MR. MILLER:  Your Honor, I have asked

21       for statements like I requested here.

22             THE COURT:  A written statement made by

23       the witness that is signed or otherwise

24       adopted or approved by the witness.

25             MR. MILLER:  Correct.  That's what I'm

1    asking for.

2          THE COURT:  But you didn't ask the

3    preliminary question of whether he relied on

4    any of those such things in order to produce

5    this provision.

6          MR. MILLER:  I think there are two

7    parts --

8          THE COURT:  I'm not going to sit here

9    all day and listen to this.  This is not a

10   trial of the case, Mr. Miller, and it's not

11   discovery.  It's probable cause.

12         MR. MILLER:  But --

13         THE COURT:  No.  Don't even argue.  Ask

14   the question, I'll rule on any objection, and

15   we'll move to the next question.

16   Q.    You heard the Court's observations.  Do

17   you have any statements that fit that description

18   with you here today?

19         THE COURT:  As pertains to what?

20         MR. MILLER:  As pertains to the

21   affidavit that you presented to the Court on

22   probable cause and facts in support of it.

23         MS. HUDSON:  Your Honor, I think the

24   question is too broad.

25         THE COURT:  Sustained.

1          MS. HUDSON:  May I ask -- can we switch

2     over to direct examination and let me ask

3     Mr. Lauziere these questions, 'cause I

4     agree --

5          THE COURT:  Procedurally --

6          MS. HUDSON:  Because I understand the

7     rules of 26.2 and if there is anything that

8     we have that fits in that description we'll

9     be happy to turn it over.

10          THE COURT:  That's fine.

11     BY MS. HUDSON:

12          Q.    Inspector Lauziere, do you have any

13     statement that you have signed or adopted upon

14     which you relied for your representations in your

15     affidavit?

16          A.    No.

17          Q.    Do you have any transcript that was

18     made from a grand jury testimony pertaining to

19     anything that you relied on in this affidavit?

20          A.    No, I do not.

21          Q.    Or have you testified in the grand jury

22     about this case?

23          A.    No.

24          Q.    And do you have any -- are you in

25     possession of any transcript of any kind, a

1    stenographic, mechanical, electrically, or

2    otherwise recorded transcript of any oral

3    statement that you have made with regard to

4    anything in this case?

5         A.    No.

6              MR. MILLER:  May I ask one preservation

7         question just for the record?

8              THE COURT:  You can always ask a

9         question.

10   BY MR. MILLER:

11        Q.    Do you have any sworn statements of

12   others on which you relied in the preparation of

13   the affidavit?

14             MR. MILLER:  I'm just doing this for

15        the preservation of the record, Your Honor.

16        I know what the Court's ruling about my

17        request to produce them, but I want to

18        establish whether or not they exist.

19             THE COURT:  Let me just start off with

20        this.  Rule 26.2 starts with these words.

21        When a witness other than the Defendant has

22        testified.  This is the witness.

23             MR. MILLER:  I understand, Your Honor.

24             THE COURT:  All right.  Cool.  They

25        have to be his statements.

1          MR. MILLER:  Or -- I think or adopted,

2      but I'm not going to belabor the point.  I

3      think adopted also fits.

4          THE COURT:  I understand.

5          MR. MILLER:  If he adopted them in the

6      search warrant that he got in Richmond for

7      example, that would be an adopted statement

8      that would fit.  And if he adopted them here

9      as he did by reference and incorporation, I

10     think it would be a statement of his that he

11     adopted in a sense.

12         THE COURT:  I understand where you're

13     going, and it's not illogical now that you've

14     put it in that framework.  But it's taking an

15     awful long time to get there.

16         MS. HUDSON:  For the record, Your

17     Honor, we disagree with that statement of --

18     it is a statement by the witness, so it would

19     have to be Mr. Lauziere's statement.

20         THE COURT:  Right.  And when it says

21     adopted, it means a statement that is adopted

22     by the witness or otherwise approved by the

23     witness.  And it deals with the same thing

24     that if he's made a statement or adopted a

25     statement by inaction or action that he's

```
 1        made on some previous occasion or has

 2        approved a statement that he's made on some

 3        previous occasion, it comes in.  I agree with

 4        the Government's representation, so I sustain

 5        the objection.  It's not whether he's adopted

 6        somebody else's statement as his, it's

 7        whether he's adopted his own statement on

 8        some other occasion.

 9        Q.    Turning your attention from paragraph

10   seven to paragraph eight where you indicate the

11   conclusion you reached based on the review of the

12   records you reference in paragraph eight, did you

13   have any basis other than the records themselves

14   for the conclusion you reached, is the first

15   question?

16             MS. HUDSON:  Objection.

17             THE COURT:  Overruled.

18        A.    The question again is --

19        Q.    Yes, you -- the conclusion you reached

20   in paragraph eight regarding sexual activity based

21   on review of documents, okay, is there any other

22   evidence outside of the review of documents in

23   which --

24             THE COURT:  That's a different

25        question.
```

1          MS. HUDSON:  Objection, Your Honor.

2          THE COURT:  Sustained.

3     Q.    Do you have any evidence outside of the

4  documents that support that conclusion?

5          MS. HUDSON:  Objection, Your Honor.

6          THE COURT:  Sustained.

7     Q.    In paragraph nine, you indicate that

8  you learned about telephone calls.  Did you listen

9  to those calls for the purpose of preparing that

10  paragraph?

11    A.    No, I had not.

12    Q.    Did you have a report from someone who

13  had listened to those calls in preparing that

14  paragraph?

15    A.    I had information from law enforcement

16  officers about those calls.

17    Q.    Do you know the source of that

18  information?

19    A.    Yes.

20    Q.    Was it the calls themselves?

21    A.    Yes.

22    Q.    Do you know whether or not the law

23  enforcements officers also played those calls for

24  civilians?

25          MS. HUDSON:  Objection, Your Honor.

1          THE COURT:  Sustained.

2          Q.    So the content of paragraph nine is the

3     conclusion an officer gave you based on what they

4     told you they heard and you did not hear yourself?

5               MS. HUDSON:  Objection, Your Honor.

6               THE COURT:  Sustained.

7               MR. MILLER:  That's under Leon, Your

8          Honor.  That's a direct --

9               THE COURT:  You can argue that to me.

10              MR. MILLER:  But I've got to establish

11         the factual predicate for it before I can

12         argue it to you.

13              THE COURT:  You just did.  You asked

14         him those questions.

15         Q.    In paragraph 10, did you interview the

16    prisoners referenced in paragraph ten yourself?

17         A.    No, I did not.

18         Q.    Did you interview the jail personnel in

19    paragraph 10 -- that are mentioned in paragraph 10

20    yourself about the content of paragraph 10?

21         A.    I spoke with people at the jail as

22    well.  I wouldn't characterize it as an interview,

23    but I spoke with them.

24         Q.    So the content of paragraph 10 is

25    third-hand hearsay related to you by others as

1    opposed to your direct interview with people

2    who've claimed to have heard the conversations; is

3    that correct?

4              MS. HUDSON:   Objection, Your Honor.

5              THE COURT:   I think he can ask the

6         question whether he interviewed any of the

7         prisoners.

8              MS. HUDSON:   Which he did, I think.   If

9         he didn't, I apologize.   But I'm objecting to

10        him referencing a conclusion that anything

11        was third-hand hearsay.

12             THE COURT:   I'll sustain the objection

13        to the form of the question.

14        Q.    You did not interview the prisoners?

15        A.    No, I did not.

16        Q.    The information you have comes from

17   others reporting what they claim the prisoners

18   told them?

19        A.    That is correct.

20        Q.    And in some instances it comes from

21   others reporting what someone else said the

22   prisoners said, as a third person; A tells B, B

23   tells C, C tells you?

24        A.    Some pieces.

25        Q.    Okay.   In paragraph 11 you indicate the

1    nature of the evidence in relationship to the

2    offenses referenced in paragraph 11 at the

3    beginning of paragraph 11.  Were you present for

4    those court proceedings?  Is that based on your

5    own first-hand knowledge?

6            MS. HUDSON:  Your Honor, could I ask

7        for clarification?  He says there is a

8        reference to the evidence in the case.  I'm

9        not seeing that in paragraph 11.

10           MR. MILLER:  He references arrest on

11       August the 1st, then he says why, November

12       the 10th, and he talks about the fact that --

13           THE COURT:  The simple factual question

14       is, were you present at any time during any

15       proceedings in the state court relating to

16       those charges.

17           THE WITNESS:  Yes, I was in J&D court

18       one time when Mr. Bray was there.

19       Q.    Which one of these two was it?

20       A.    I don't recall.  I don't know.  I'd

21   have to look back and see which one of those cases

22   it would have been.

23       Q.    Would it be correct to say that the

24   event of November the 10th involved him being in

25   an automobile with his daughter and "B?"

1          MS. HUDSON:  Objection, Your Honor.

2          THE COURT:  On what basis?

3          MS. HUDSON:  Again, to relevance.

4     We've alleged no facts on the November 10th

5     incident.  It's beyond our affidavit and has

6     nothing to do with the establishment of

7     probable cause.

8          MR. MILLER:  I read in there that he

9     claims that it involved sexual contact or

10    attempted sexual contact.  And November the

11    10th did not, and I want to know whether he's

12    aware of it.

13         THE COURT:  It says what it says.

14         MR. MILLER:  But he lumps the two

15    together and I'm trying to distinguish the

16    issues for the Court.

17         MS. HUDSON:  Your Honor, Mr. Miller

18    will have an opportunity to establish if he

19    can that he was not arrested on these dates

20    for contributing to the delinquency of a

21    minor.

22         MR. MILLER:  That's not what they say.

23         MS. HUDSON:  That's how I'm reading the

24    first sentence in paragraph 11.

25         MR. MILLER:  If they want to leave the

1      first sentence and strike the second -- the

2      rest of it, I agree.  Fine.

3           THE COURT:  I'm not asking that they do

4      anything.  I'm reading the whole paragraph as

5      a whole.

6           MR. MILLER:  Then I get to examine the

7      validity of the paragraph as a whole and

8      whether or not it speaks the truth.

9           THE COURT:  Well, let me just ask this.

10     On November -- I mean on August the 1st, 2001

11     and on November the 10th, 2001, is it your

12     information that Mr. Bray was in court on

13     charges?

14          THE WITNESS:  Yes.

15          THE COURT:  And can you tell the Court

16     whether you were present on either one or

17     both of those occasions?

18          THE WITNESS:  Your Honor, I was in

19     court for a contributing to the delinquency

20     of a minor charge relative to Mr. Bray, and I

21     do not recall which one of those it was.

22          THE COURT:  Can you tell me whether it

23     was relative to minor "A" or minor "B?"

24          THE WITNESS:  It was relative to minor

25     "A."

1              THE COURT:  Can you tell us whether you

2       became aware of the instances concerning

3       minor "A" that led to the delinquency charge?

4              THE WITNESS:  Yes, I did.

5              THE COURT:  Go ahead, Mr. --

6       Q.     The incident giving rise to the charge

7   of the 10th of November, focusing on that, isn't

8   it a fact that that incident involved Mr. Bray and

9   "A" in an automobile with one of Mr. Bray's

10  daughters after a football game, without more?

11      A.     I don't know that.

12      Q.     Do you know that that's not true?

13      A.     I don't know that.

14      Q.     One way or the other?

15             THE COURT:  That's what he just said.

16  He doesn't know.

17      A.     I don't know.

18      Q.     Are you certain that there was an

19  arrest on August the 1st, 2001?

20      A.     Based on the criminal history record,

21  yes.

22      Q.     Do you have that criminal history

23  record?

24      A.     I believe I have a copy of it.

25      Q.     Would you refresh your recollection and

1  see whether or not it was August the 1st or a July

2  arrest?

3          MR. MILLER:  Just for the record, Your

4      Honor.  I think that my review of his record

5      gives me a conflict with that date and I'd

6      like -- I'm not asking to go read all his

7      files.  I just want him to look at that

8      record.

9          THE COURT:  He can look.

10          THE WITNESS:  I will.  I don't see that

11      one in my file right here right now.  I can

12      expand a little bit.  I also relied on copies

13      of -- at least the face copy of the CCRE or

14      the arrest report for that date.

15      Q.    Isn't it a fact that there was -- that

16  the earlier arrest, which may not have been August

17  the 1st, involved a long night motorcycle ride and

18  that the evidence at trial showed that Mr. Bray

19  had taken "A" on a long night motorcycle ride to

20  Fredericksburg and back?

21          MS. HUDSON:  Objection.

22          MR. MILLER:  He says he was in court.

23          THE COURT:  Sustain the objection.  My

24      recollection is that a conviction merges the

25      evidence into whatever was the conviction.

1          MR. MILLER:  Your Honor, there's an

2    allegation here that's specific and if the

3    Court will strike that allegation then I

4    don't need to prove --

5          THE COURT:  I'm not going to strike

6    anything.  Sustain the objection.

7          MR. MILLER:  Fine, Your Honor, but I --

8          THE COURT:  I sustain the objection.

9          MR. MILLER:  For the record, Your

10   Honor --

11         THE COURT:  I sustain the objection.

12         MR. MILLER:  Yes, Your Honor.

13         THE COURT:  What's your next question?

14   Q.    Isn't it a fact that there is no

15   evidence of acts of delinquency involving sexual

16   activities and attempted sexual conduct in either

17   of those two cases?

18   A.    It was my understanding that it did.

19   Q.    What's the source of your

20   understanding?

21   A.    Information from law enforcement

22   officers.

23   Q.    Okay.  So -- and it is fair to say that

24   you're not able to stand here and say it's based

25   on what was produced at trial?

1           THE COURT:  Mr. --

2           MR. MILLER:  He was there one time,

3     Your Honor.

4           THE COURT:  Listen to me.  Are you

5     challenging this statement:  Bray was

6     convicted and sentenced to terms of probation

7     as well as a three-month jail sentence for

8     those crimes.  Are you challenging that?

9           MR. MILLER:  No, I'm in the next

10    sentence, Your Honor.

11          THE COURT:  Well, that's okay if you're

12    not challenging that.  I'm striking all of

13    that from consideration.  Not from the

14    record, but from consideration.

15          MR. MILLER:  All right, Your Honor.

16          THE COURT:  I could care less what the

17    evidence was.  I'm not going to retry it and

18    I'm not going to allow inquiry about its

19    substantiality because he was convicted and

20    that ends the matter.  Next question.

21          Q.    Now, do you know Detective Garland

22    Mills?

23          A.    Yes, I do.

24          Q.    Do you know that Detective Garland

25    Mills has been involved in all of Mr. Bray's

1    cases?

2            MS. HUDSON:  Objection, Your Honor.

3        Relevance.

4            THE COURT:  Sustained.

5            MR. MILLER:  Relevance to paragraph 12,

6        Your Honor.

7            MS. HUDSON:  We continue our objection.

8        Whether Mr. Mills's name is in this has no

9        bearing on whether he was involved in other

10       cases or not.  This is a hearing about

11       whether there is PC contained in this

12       affidavit to establish that Mr. Bray violated

13       24.22 of Title 18.

14           THE COURT:  I agree.

15           MR. MILLER:  The last sentence of

16       paragraph 12 is inaccurate and false.  There

17       have been no convictions and I believe

18       Garland Mills knows that and made that

19       available to this agent.

20           THE COURT:  Why don't you ask if he

21       knows his conviction record?

22           MR. MILLER:  I want to establish

23       Mr. Mills's involvement -- the length of

24       involvement in the case and lay a

25       foundation --

1           MS. HUDSON:  Paragraph 12 alleges no

2    convictions, Your Honor.

3           THE COURT:  Might be great for a jury

4    Mr. --

5           MR. MILLER:  No, Your Honor --

6           MS. HUDSON:  It says he was charged.

7           THE COURT:  But it's just not making

8    any hay.

9           MR. MILLER:  It says -- the last

10   sentence says the dispositions are unknown

11   and they are known.

12          MS. HUDSON:  They're not known --

13          THE COURT:  It does not say that.

14          MR. MILLER:  It says --

15          THE COURT:  Wait a minute.  What was

16   the first thing you just told me, that

17   they're unknown.  Do you remember saying that

18   word?

19          MR. MILLER:  Yes.  Exactly.

20          THE COURT:  That is not what the

21   affidavit says.  It says the dispositions of

22   those arrests have not been ascertained.  Far

23   different.  Got any other questions?

24          MR. MILLER:  I consider that to be --

25          THE COURT:  I sustain the objection.

1          MR. MILLER:  And I did not intend --

2          THE COURT:  I don't care what you

3     consider --

4          MR. MILLER:  All right, Your Honor.

5          THE COURT:  -- for that purpose.  I do

6     care what you consider, but I don't care what

7     you consider for those purposes.  Your

8     statement to me was factually inaccurate.

9          MR. MILLER:  It was not intended to be

10    inaccurate.  The reading of the plain

11    language of that sentence --

12         THE COURT:  Well, you just answered the

13    question for your witness.  So go ahead.

14         MR. MILLER:  Actually it's the

15    Government's witness, but that's all right,

16    Your Honor.

17    Q.    In paragraph two on Page 2 --

18         THE COURT:  You know, I'm almost

19    willing to use the Eastern District struck

20    jury system here.  Once you pass up a

21    paragraph you can't go back and inquire about

22    it.

23         MR. MILLER:  I'm not aware of that

24    rule, Your Honor.

25         THE COURT:  Once you pass up a juror in

production@cavalier-reporting.com
(Fax) 434.975.5400                    Cavalier Reporting, Inc                    www.cavalier-reporting.com
                                                                                (Direct) 434.293.3300

1          the Eastern District of Virginia, you can't

2          go back and strike.

3               MR. MILLER:  And you are advised of

4          that when the trial begins and they don't

5          change the rules in the middle of the game.

6               THE COURT:  I'm not going to be here

7          but another three or four minutes on probable

8          cause, Mr. Miller.

9     Q.     Isn't it a fact in paragraph two that

10   the police have photographs of Mr. Bray right when

11   they entered the room and he was clothed and "A"

12   was clothed -- wearing clothes?

13               MS. HUDSON:  Objection, Your Honor.  I

14          think it goes to discovery.  I think he could

15          ask how Mr. Lauziere knows the contents of

16          the information in paragraph two, but I think

17          this question goes to discovery --

18               THE COURT:  I agree.  Sustained.

19          Whether he was clothed at some time does not

20          go to whether the statement is true or false

21          concerning the fact that his pants were down.

22    Q.     Isn't it a fact that his pants were not

23   down and he was clothed and the police don't have

24   any information to the contrary?

25    A.     That's not what I was told.

1          Q.     Isn't it a fact that they have

2     photographs that show that that statement's

3     inaccurate?

4               MS. HUDSON:   Objection, Your Honor.

5          This has been asked and ruled on already by

6          the Court.

7.              THE COURT:   He can ask if he reviewed

8          photographs and he can say whether he did or

9          didn't.

10              MS. HUDSON:   That wasn't his question.

11              THE COURT:   I understand.   Sustain the

12         objection.

13         Q.     Did you review photographs that were

14    taken right upon entry that showed that he was

15    dressed?

16         A.     I did not review photographs.

17              MR. MILLER:   No other questions.

18              THE COURT:   Any further questions?

19              MS. HUDSON:   No, Your Honor.

20              THE COURT:   I find probable cause.

21              MR. MILLER:   Your Honor, may I put a

22    couple points on the record, please?

23              THE COURT:   Sure.   You can step down,

24         Mr. Lauziere.

25              MS. HUDSON:   We're going to have some

1       evidence with regard to bail.

2           MR. MILLER:  This won't be long, Your

3       Honor.  The conclusory paragraphs to which

4       I've made reference under Leon are not a

5       basis for probable cause.  And if you strike

6       them from this, then you're in a circumstance

7       where there's not probable cause for the

8       offense because it's no direct evidence of

9       how or where anything came from.  It's all

10      conclusory.  In Leon there were key core

11      points on which the court relied.  One was in

12      deference for magistrates' decisions.  Then

13      when they finished that analysis they went on

14      to say that that deference and preference is

15      not boundless and that there are

16      circumstances for which that deference will

17      not apply.  One was the Jenks issue.  The

18      second one was -- and the one on which they

19      spent more elaboration -- was where the

20      affiant provided the judicial official with

21      conclusions that they had reached lacking a

22      factual predicate for the court to make its

23      own independent determination.  So when

24      someone says, someone said that someone said

25      that someone said and this is the conclusion

1      that they reached, or this is what someone

2      said happened here and this is the conclusion

3      they reached then there are no factual bases

4      for it provided to the decider even in an ex

5      parte secret one-on-one meeting with an

6      affiant in a court, let alone in an

7      adversarial proceeding.  So if it doesn't

8      stand muster for a finding of probable cause

9      in what is allowed to be an ex parte secret

10     meeting between an affiant and judicial

11     official, then it cannot stand muster in a

12     proceeding where there's an adversarial

13     process and there are wholly stated

14     conclusions without the factual predicate.

15     So the affidavit to that regard fails.

16              MS. HUDSON:  May I respond, Your Honor?

17              THE COURT:  Sure.

18              MS. HUDSON:  Just for the record, even

19     if this Court only relied on the very clear

20     facts in Attachment A, which is a transcript

21     of an e-mail sent by Mr. Bray to a minor

22     child, and Attachment C, which is a letter

23     that he wrote also to a minor child while

24     incarcerated on charges for contributing to

25     the delinquency of a minor, the Government

1       would have far exceeded its burden to

2       establish probable cause.

3              THE COURT:  I agree with that, but I

4       also believe that this witness has testified

5       that people who would otherwise be considered

6       to be reliable sources for information have

7       given him information.  Whether it is all

8       true in fact after full trial on the merits

9       of the case is not a consideration as to

10      whether there's probable cause based on the

11      fact that the information was garnered from

12      sources that people in my position or in any

13      other judicial position can reasonably rely

14      on to determine whether the facts exist from

15      a probable cause standpoint.  That this

16      witness didn't do an investigation of the

17      sources of -- that is of the information

18      itself is not required either by the

19      Constitution or by any decisional authority

20      that I'm aware of.  And I believe that there

21      is a reasonable basis upon which this Court

22      not only issued the warrant but upon which

23      the Court can find probable cause that this

24      man committed the offenses with which he is

25      currently charged.  So I find probable cause.

1        You may proceed.

2              MS. HUDSON:  Your Honor, actually I

3        misspoke.  Our position is that pursuant to

4        Title 18 Section 31.56, this is a crime of

5        violence which is alleged in the affidavit

6        and therefore it's a presumption case and we

7        believe that it's Mr. Miller's burden to go

8        forward with reasons why he should be

9        released.

10             MR. MILLER:  Your Honor, it's not a use

11       of force case.  It doesn't require use of

12       force.  If you look at 31.56-4 for crimes of

13       violence, it has to have an element of the

14       offense, the use, attempted use, or

15       threatened use of physical force.  That's not

16       an element of the offense that's before the

17       Court in the complaint that I have.  The

18       complaint that I have is under 18 U.S.C. and

19       it involves the enticement.  And the crime is

20       the enticement.  The crime does not require

21       that the enticement was successful.

22             THE COURT:  How about Paragraph B?

23             MR. MILLER:  Paragraph B says --

24             THE COURT:  Or any other offense that

25       is a felony and that by its nature involves a

1       substantial risk that physical force against

2       a person may be used.

3            MS. HUDSON:  Your Honor, it's even more

4       specific than that in Paragraph C.  It's any

5       felony under chapters defined there beginning

6       with sections 22.41 ad sec.  This is section

7       22.42.  It's specifically statutorily

8       designated as a crime of violence.

9            MR. MILLER:  Your Honor, I would say

10      that under 22.42 because the statute requires

11      only proof of the verbal act with the

12      motivation behind it that it's not an element

13      and it's not an act of violence and it

14      doesn't create --

15           THE COURT:  I'm not going to second

16      guess Congress.  They put it in there.  By

17      my, you know, pitiful little reading, 22.41

18      ad sec includes 22.42, by my pitiful little

19      reading.  So therefore the burden is on you.

20           MR. MILLER:  All right, Your Honor.  I

21      would then indicate to the Court the

22      following.  Mr. Bray has no convictions of

23      violence, no convictions of failure to

24      appear, and no convictions outside of the

25      charges related to this case and the time

1          frame that's in your complaint.  The

2          contributing incident, number one, state

3          charge, involved a motorcycle ride in July

4          with "A" to Fredericksburg and back.

5          Mr. Dwoskin, who is state counsel for

6          Mr. Bray was there.  She was out way late,

7          parents didn't know where she was.  There was

8          no testimony presented at that case or on the

9          appeal of that case at any time that there

10         was any sexual or attempted sexual conduct as

11         contained in the affidavit in support of the

12         complaint.  The second event of November

13         involved he, his daughter, and "A" in a car

14         after a football game.  No attempted or

15         actual sexual conduct involved there.  The

16         two cases in January of this year got bungled

17         into an arraignment that led to a period of

18         incarceration that is correctly reflected

19         here.  And he did get convictions.  Now, when

20         the police raided on the 15th of February of

21         2002 according to the photographs the

22         Commonwealth of Virginia showed to

23         Mr. Dwoskin in discovery that were taken

24         right upon entry, he was on the floor

25         clothed.  He had some kind of gym shorts and

1    a shirt on, and she was clothed in blue jeans

2    and a tee-shirt.  He was never shown any

3    photographs --

4        MS. HUDSON:  Objection, Your Honor.

5    Mr. Miller is arguing facts not in the

6    record.

7        MR. MILLER:  I'm proffering as I'm

8    entitled to do in a bail hearing.  The

9    statute permits the defense to proffer.

10   Mr. Dwoskin is here.  This is the discovery

11   he got in that case.

12       THE COURT:  The statute permits it if

13   everybody's agreeable to it.

14       MR. MILLER:  No, the statute permits it

15   unless the Court rules otherwise.  If the

16   Court's ruling otherwise I'll call

17   Mr. Dwoskin and have him testify to the

18   discovery he got in that case.

19       THE COURT:  Ms. Hudson?

20       MS. HUDSON:  Your Honor, I'd have to

21   look at the rule again, but we do object to

22   the proffer and we think that the facts of

23   the underlying cases here are irrelevant.  In

24   addition to that, Mr. Bray's refused to be

25   interviewed by the pretrial services officer,

1        so I just -- I can't fathom what

2        representation about the facts of alleged

3        underlying --

4              THE COURT:  I'm not ever going to let

5        anybody out on bail unless they've conferred

6        with pretrial.

7              MR. MILLER:  I advised pretrial this

8        morning when I got here because he was

9        arrested over the weekend.  He and I talked.

10       I think it was Tuesday I found out from

11       Mr. Smith from pretrial that they had not

12       talked.  I indicated to Mr. Smith that I

13       would get with Mr. Bray, which I did on the

14       phone, but he was in Orange.  Mr. Smith --

15             THE COURT:  I specifically remember --

16       and maybe this wasn't the case, but my

17       recollection is that I told him he needed to

18       talk to pretrial and if he didn't I could

19       actually use that against him.

20             MR. MILLER:  He talked with me and

21       agreed to talk to pretrial as soon as he got

22       with me, which is after court, and I got

23       ahold -- and found out it was Mr. Smith who

24       at that time had the case.  I talked with

25       Mr. Bray yesterday.  He was in Orange.

1        They're not allowed to do any other kind of

2        calls.  I got here early this morning an hour

3        before court to go to pretrial to advise them

4        about it.  I found out earlier that Mr. Smith

5        was in Roanoke and as of 9:30 they weren't

6        sure who was going to cover the case.  But I

7        did come to let them know, because Mr. Smith

8        had indicated to me --

9            THE COURT:  Why is who covers the

10       case -- why is that relevant?

11           MR. MILLER:  Because -- someone to talk

12       to him.  Mr. Smith had indicated to me that

13       someone could talk to him before court.

14       That's why I got here early to make sure that

15       communication was clear and --

16           MS. HUDSON:  We consider bond at this

17       point premature for consideration, Your

18       Honor.

19           MR. MILLER:  Your Honor, you can have

20       the interview done this morning, today since

21       he's from Orange and save the marshals the

22       trouble of bringing him back and forth.

23           THE COURT:  Which we do from time to

24       time.  If he wants to talk to pretrial,

25       that's fine.  But I'm not -- until I can get

1       a full background and verifications and all

2       that sort of stuff from pretrial services, I

3       don't think you can discharge your burden in

4       this case, 'cause I need to know about him.

5       I need to know about him from people who I

6       can count on.

7           MR. MILLER:  I have counsel that

8       represented him at the bail hearing in

9       circuit court.  And the representations that

10      were made there can be made to the Court.

11      It's a matter of record.  We have a letter

12      from the probation parole officer from

13      District 9 dated the 19th, which I'll tender

14      to the prosecutor and to the Court.  They're

15      aware that he's arrested here.  He was

16      released on bail there.  I don't think

17      there's any dispute about that.  Mr. Dwoskin

18      will testify that he was released to the

19      address at which he was arrested.  Probation

20      parole knew where he was.  They sent this

21      letter to him which indicates that he is to

22      report to them after his release.  They're

23      not seeking a violation.  They're aware of

24      this charge.  And he did get bond --

25          THE COURT:  So he was on probation or

production@cavalier-reporting.com
(Fax) 434.975.5400                    Cavalier Reporting, Inc                    www.cavalier-reporting.com
(Direct) 434.293.3300

1     release when this offense occurred?

2          MR. MILLER:  No, sir.

3          MS. HUDSON:  He was actually

4     incarcerated on contributing to the

5     delinquency of a minor.  The offense actually

6     encompasses a breadth of time, but...

7          MR. MILLER:  All of the -- the officer,

8     Garland Mills, who is the prime investigator

9     in this case --

10         MS. HUDSON:  Objection, Your Honor.

11    Les Lauziere is the -- Mr. Miller is trying

12    to create a record and we know why and --

13         THE COURT:  I know what he's doing and

14    it's not having any effect.

15         MR. MILLER:  Your Honor, Mr. Mills is

16    the officer in the state cases that -- and

17    he's the individual who approached

18    Mr. Lauziere.

19         MS. HUDSON:  And this is a federal case

20    now, Your Honor, and Mr. Mills is not the

21    chief investigator in this case.

22         THE COURT:  I'm not going to grant bail

23    until such time as he talks to pretrial and

24    we can have all of that put in context by the

25    pretrial services officer.

production@cavalier-reporting.com
(Fax) 434.975.5400                Cavalier Reporting, Inc                www.cavalier-reporting.com
(Direct) 434.293.3300

1          MR. MILLER:  Can we do that now?  Can

2     we have an adjournment for that to take

3     place?

4          THE COURT:  Might be, but it's going to

5     be this afternoon.

6          MR. MILLER:  That's fine.

7          THE COURT:  What do I have scheduled

8     this afternoon?  We'll adjourn and

9     reconvene -- are you available at 2:00?

10          MS. HUDSON:  Yes, sir, I am.

11          MR. MILLER:  That's fine.  I just don't

12     think the marshals should have to go back and

13     forth more than once.  I tried to get here

14     early to set it up.  I didn't realize

15     Mr. Smith was going to be away.

16          THE COURT:  I just want the marshal

17     service to know he has your interest at

18     heart.  We appreciate that.  2:00.

19

20

21

22

23

24

25

1                    CERTIFICATE OF COURT REPORTER

2

3

4

5          I certify that the foregoing is a correct

6     transcript from the record of proceedings in the

7     above-entitled matter.

8

9

10              Karina L. Chesbrough, Notary Public

11              Commonwealth of Virginia at Large

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

able 54:24
about 16:25 17:19,19
17:20 20:21 24:23
28:25 29:1,2 31:5
33:9 38:19 39:13
42:22 43:16 46:8
46:16 47:20 49:12
55:18 56:10 58:21
64:22 68:2 69:4
70:4,5,17
above-entitled 73:7
Absolutely 10:3
according 17:9,10
66:21
account 26:8,10
accounts 24:4
accused 33:4
act 29:4,5,14 34:1,2
34:16 35:18 37:23
65:11,13
action 44:25
activities 54:16
activity 45:20
acts 54:15
actual 66:15
actually 58:14 64:2
68:19 71:3,5
ad 65:6,18
addition 67:24
additional 9:20 25:1
address 25:14 29:11
70:19
addressed 37:25
addressing 29:7
adjourn 72:8
adjournment 72:2
admissibility 29:24
admissible 21:12
adopted 36:2 40:24
42:13 44:1,3,5,7,8
44:11,21,21,24
45:5,7
advance 4:12
adversarial 62:7,12
advise 69:3
advised 59:3 68:7
affects 29:9
affiant 61:20 62:6,10
affidavit 9:10 10:5
10:23 11:8 12:5
13:1 17:15,17 23:6
24:9 27:23 28:4
32:17 38:17 41:21
42:15,19 43:13
50:5 56:12 57:21

62:15 64:5 66:11
affidavits 40:7
affirm 10:13
after 10:2 18:17
23:10,13 52:10
63:8 66:14 68:22
70:22
afternoon 72:5,8
again 45:18 50:3
67:21
against 65:1 68:19
agent 6:24 23:15
33:14 35:16,17
37:24 56:19
agree 16:18 38:11
42:4 45:3 51:2
56:14 59:18 63:3
agreeable 6:7 67:13
agreed 68:21
ahead 12:2 16:5
30:12 52:5 58:13
ahold 68:23
Alexandria 2:16
allegation 13:14,17
26:2 54:2,3
allegations 17:13
alleged 13:1 50:4
64:5 68:2
alleges 57:1
allow 15:10 25:10
55:18
allowed 62:9 69:1
almost 58:18
alone 62:6
along 5:21
already 23:15 60:5
always 43:8
amended 34:8 37:12
America 24:3
analysis 61:13
animal 38:14
another 4:22 20:23
23:2,23 25:12
37:25 40:12 59:7
answer 17:21 19:7
23:19 27:19 32:10
answered 23:15,16
58:12
anybody 68:5
anymore 22:8
anything 13:1 36:13
39:20 40:2 42:7,19
43:4 48:10 51:4
54:6 61:9
apologize 48:9
appeal 66:9

Appeals 14:25
appear 65:24
application 26:25
applied 33:24,24
applies 33:2 36:17
36:18
apply 35:9 61:17
appreciate 72:18
approach 6:8 21:4
approached 71:17
approved 36:3 40:24
44:22 45:2
April 26:22 28:8
31:7,16
area 29:7
argue 30:9 31:9
41:13 47:9,12
arguing 67:5
argument 17:17
argumentative 16:19
around 29:14 31:18
31:21 39:9 40:11
arraignment 66:17
arranged 16:7
arranging 16:8 18:1
arrest 49:10 52:19
53:2,14,16
arrested 50:19 68:9
70:15,19
arrests 57:22
articulate 30:19
articulating 40:1
ascertained 57:22
asked 11:25 16:16
19:1 38:1,4,13
40:20 47:13 60:5
asking 16:11 37:24
38:6,19 39:6 41:1
51:3 53:6
asks 33:16
assessment 28:24
29:1
assistance 22:19
Assistant 2:10 7:10
assume 10:23
attached 5:19 24:17
25:20
Attachment 5:13,15
17:14 62:20,22
attempted 50:10
54:16 64:14 66:10
66:14
attention 45:9
attorney 2:10,15 7:8
7:11 11:25 20:8
30:5

**ATTORNEY'S** 2:11
August 28:5 31:25
49:11 51:10 52:19
53:1,16
authority 63:19
automobile 49:25
52:9
available 37:16,17
56:19 72:9
aware 12:9,17 16:6
16:21 18:3 50:12
52:2 58:23 63:20
70:15,23
away 72:15
awful 44:15
a.m 1:12,12 2:5

**B**

**B** 1:11 2:1 7:25 9:6
9:11 48:22,22
49:25 51:23 64:22
64:23
back 9:1,1 49:21
53:20 58:21 59:2
66:4 69:22 72:12
background 29:3
70:1
bad 39:15,19
bail 9:14,16,22 27:5
27:8 28:15,17 29:4
29:5,14 30:2 31:9
61:1 67:8 68:5
70:8,16 71:22
bailiff 6:16
barn 22:13
Barrett 2:10
based 14:11 18:9
19:14 20:3 26:5,7
45:11,20 47:3 49:4
52:20 54:24 63:10
bases 62:3
basis 12:20 14:13,18
14:21 18:23 19:18
21:13 24:6 27:2
35:4 45:13 50:2
61:5 63:21
bearing 56:9
became 52:2
before 1:10 2:1 5:7,9
10:22 12:10 15:12
23:13 29:24 33:1
35:11,12,13 47:11
64:16 69:3,13
begin 5:8
beginning 40:15 49:3
65:5

begins 59:4
behalf 9:17
behavior 12:23
behind 65:12
being 4:14 10:16
39:12 49:24
belabor 44:2
believe 15:14 18:2
20:15 52:24 56:17
63:4,20 64:7
believed 15:16
bench 21:4
best 19:7
between 39:25 62:10
beyond 37:20 50:5
bit 6:10 53:12
blue 67:1
bond 69:16 70:24
both 9:21 35:10
51:17
bottom 19:25 21:21
boundless 61:15
Bray 1:7 4:3 7:6 17:9
49:18 51:12,20
52:8 53:18 55:5
56:12 59:10 62:21
65:22 66:6 68:13
68:25
Bray's 17:6 52:9
55:25 67:24
breadth 19:2 71:6
briefly 5:8 17:6
bring 8:25
bringing 69:22
broad 41:24
brought 4:22,24
bungled 66:16
burden 63:1 64:7
65:19 70:3

**C**

**C** 2:8 5:13,15 17:14
48:23,23 62:22
65:4
calendar 31:20
call 67:16
called 5:10 10:15
33:20
calls 46:8,9,13,16,20
46:23 69:2
came 17:18,20 61:9
car 66:13
care 28:25 29:1
55:16 58:2,6,6
case 1:5 4:25 5:10,12
6:24 8:4,13 13:13

20:20,21 23:17
24:10 29:6,7,10,16
29:18 30:1 37:8
41:10 42:22 43:4
49:8 56:24 63:9
64:6,11 65:25 66:8
66:9 67:11,18
68:16,24 69:6,10
70:4 71:9,19,21
cases 11:16 29:13
30:2,4 34:5 49:21
54:17 56:1,10
66:16 67:23 71:16
caught 39:24
cause 10:4 11:25
12:1 13:3,8,16 14:1
14:17,19 15:17
17:4 22:9,11 25:4,6
25:21 26:2 30:20
30:24 32:24 35:5,8
41:11,22 42:3 50:7
59:8 60:20 61:5,7
62:8 63:2,10,15,23
63:25 70:4
CCRE 53:13
certain 16:8 31:17
39:4 52:18
certainly 30:7
CERTIFICATE
73:1
certify 73:5
cetera 20:2 26:21
challenge 15:5,10
21:14 22:8,11
challenging 24:21
55:5,8,12
change 59:5
chapters 65:5
characterize 47:22
charge 51:20 52:3,6
66:3 70:24
charged 57:6 63:25
charges 28:18 49:16
51:13 62:24 65:25
Charlottesville 1:2
1:14 2:6,7,12
cheap 40:11
Chesbrough 1:25 2:3
73:10
chief 71:21
child 62:22,23
children 5:16
chronologically
23:13
circuit 20:13 70:9
circumstance 61:6

circumstances 61:16
civilians 46:24
claim 48:17
claimed 48:2
claims 50:9
clarification 28:6
49:7
clarify 16:24
clear 8:1 15:3,10
21:15 30:3,7,7
34:24 36:22 37:6
62:19 69:15
clearly 37:15
clerk 4:17 8:14
clients 30:2
clip 8:15
clothed 59:11,12,19
59:23 66:25 67:1
clothes 59:12
code 17:10 31:8
come 21:24 22:5
27:12 69:7
comes 45:3 48:16,20
coming 9:1 27:18
28:1
commencing 2:5
committed 63:24
committee 34:7,10
36:20,21 37:11
Commonwealth 2:4
20:9 66:22 73:11
communication 31:5
31:14 69:15
communications
24:2 26:24 27:22
28:3 30:14 31:24
complaint 5:12,13,19
8:22 9:24 24:10,17
25:19 26:25 64:17
64:18 66:1,12
completely 12:25
computer 26:21
30:15
computers 20:1
concerning 52:2
59:21
conclude 23:25
conclusion 24:5,6,13
25:9,16 26:5 45:11
45:14,19 46:4 47:3
48:10 61:25 62:2
conclusions 61:21
62:14
conclusory 61:3,10
conduct 29:9 54:16
66:10,15

conducting 9:13
conferred 68:5
confine 40:16
conflict 53:5
Congress 65:16
consider 16:4 29:20
29:23,25 57:24
58:3,6,7 69:16
consideration 13:19
14:13 55:13,14
63:9 69:17
considered 14:11,22
63:5
constitute 14:18
Constitution 63:19
contact 50:9,10
contain 38:23
contained 32:16
56:11 66:11
content 47:2,20,24
contents 59:15
context 17:12 33:15
71:24
contexts 35:10
continue 56:7
contrary 59:24
contributing 50:20
51:19 62:24 66:2
71:4
conversations 48:2
convicted 55:6,19
conviction 17:5,11
53:24,25 56:21
convictions 56:17
57:2 65:22,23,24
66:19
Cool 43:24
copies 5:2 53:12
copy 4:13,16,22
36:24 52:24 53:13
core 61:10
correct 20:10,18
40:25 48:3,19
49:23 73:5
correctly 35:19
66:18
counsel 4:4 7:5 10:7
66:5 70:7
count 70:6
couple 5:9 60:22
court 1:1,25 2:3,6
4:1,13,15,17 5:1,5
5:11,20,24 6:5,14
6:15,21 7:1,6,12,18
8:9,12,16,19,24 9:5
9:9,12,19 10:3,9,12

10:18 11:1,4,7,23
12:20 13:2,20,24
14:4,7,11,14,24,25
15:5,12,20,24,24
15:25 16:4,12,18
17:21 19:4,16
20:13,25 21:3,6,9
21:13,14 22:7,12
23:1,18 24:9,16,21
25:3,7,17 27:2,9,14
28:14,19,25 29:12
29:18 30:6,12,16
31:1,9,11 32:10,14
32:19,22 33:3,6,9
33:19 34:7,21 35:1
35:12,13,18 36:1
36:17 37:7,8 38:5
38:11 39:1,3,7,12
39:16,24 40:9,14
40:19,22 41:2,8,13
41:19,21,25 42:5
42:10 43:8,19,24
44:4,12,20 45:17
45:24 46:2,6 47:1,6
47:9,13 48:5,12
49:4,13,15,17 50:2
50:13,16 51:3,9,12
51:15,15,19,22
52:1,5,15 53:9,22
53:23 54:3,5,8,11
54:13 55:1,4,11,16
56:4,14,20 57:3,7
57:13,15,20,25
58:2,5,12,18,25
59:6,18 60:6,17,19
60:18,20,23 61:11
61:22 62:6,17,19
63:3,21,23 64:17
64:22,24 65:15,21
67:12,15,19 68:4
68:15,22 69:3,9,13
69:23 70:9,10,14
70:25 71:13,22
72:4,7,16 73:1
courtroom 6:17
Court's 6:2 13:19
29:25 40:8,9 41:16
43:16 67:16
cover 4:8 69:6
covered 33:16 36:8,9
covers 69:9
co-counsel 7:10
crafting 23:6
create 36:22 65:14
71:12
credibility 15:6,11

15:13,21 23:21
credible 14:3,15,22
23:20
credits 15:24,24
CRIGLER 1:11 2:2
crime 64:4,19,20
65:8
crimes 55:8 64:12
criminal 8:21 17:9
52:20,22
criticizing 31:1
39:23
cross 9:24 10:7,19
13:21,24 37:19
38:25
cured 5:5
current 11:9 17:13
currently 9:13 63:25
cut 30:21 36:14

## D

D 2:15 3:1
dance 14:24 39:9
Daniel 1:7 4:3
Danielle 7:25
date 31:19,20 53:5
53:14
dated 28:4 31:5
70:13
dates 50:19
daughter 49:25
66:13
daughters 52:10
day 4:7 41:9
DEA 37:22 38:7
deal 25:23 34:16
dealing 8:2
deals 17:4 29:5 44:23
dealt 34:11
decider 62:4
decisional 63:19
decisions 61:12
Defendant 1:8 2:14
9:15 43:21
Defendant's 34:13
defense 9:18 10:7
67:9
deference 22:15
61:12,14,16
defined 65:5
defines 37:1
definition 35:23 36:8
38:10
delinquency 50:20
51:19 52:3 54:15
62:25 71:5

production@cavalier-reporting.com
(Fax) 434.975.5400
Cavalier Reporting, Inc
www.cavalier-reporting.com
(Direct) 434.293.3300

describe 24:2
description 41:17
    42:8
design 30:22
designated 7:24,25
    65:8
detail 19:2,5
Detective 22:19 24:1
    55:21,24
determination 14:10
    15:25 61:23
determinations
    15:22
determine 13:10,15
    14:8,11,15,21
    25:20 63:14
determiner 14:17
determining 15:16
developed 30:14
difference 23:1
different 26:9 27:15
    28:1 38:14 39:16
    45:24 57:23
differently 27:16
diminution 26:1
direct 8:14 42:2 47:8
    48:1 61:8
directed 30:19 33:19
disagree 38:4,9,12
    44:17
discharge 70:3
disclosed 24:1
discover 32:25
discovery 22:7 25:3
    27:4 28:13 30:17
    32:19,24 37:3,14
    39:1 41:11 59:14
    59:17 66:23 67:10
    67:18
discussed 5:8
discussion 34:10
diskettes 20:2
dispositions 57:10,21
dispute 70:17
distinguish 39:14,17
    50:15
District 1:1,2 2:6
    26:20 58:19 59:1
    70:13
Division 1:2 2:7
docket 4:2
document 5:22
documents 23:5
    45:21,22 46:4
doing 7:14 9:20 10:9
    22:12 35:6,16

43:14 71:13
done 25:13 69:20
down 15:8,9 23:3
    30:22 31:20 39:10
    59:21,23 60:23
dressed 60:15
drive 26:23
Duke 2:16
duly 10:16
during 49:14
duties 11:10
Dwoskin 7:5 66:5,23
    67:10,17 70:17

          E
E 2:8,8 3:1 10:15,15
    10:15
earlier 23:11 53:16
    69:4
early 69:2,14 72:14
Eastern 26:20 58:19
    59:1
effect 71:14
eight 45:10,12,20
either 4:25 21:7
    34:14 40:1,16
    51:16 54:16 63:18
elaboration 61:19
electrically 43:1
electronic 24:3 27:22
element 64:13,16
    65:12
else's 26:6 45:6
enclosing 4:9
encompasses 71:6
ends 55:20
enforcement 17:23
    19:21,22 46:15
    54:21
enforcements 46:23
engaged 29:8
enigma 24:23 27:18
enough 25:25 30:7
entered 12:11 59:11
enticement 11:16
    13:11 16:7,17
    17:13 64:19,20,21
entire 25:18
entitled 29:25 30:23
    32:21 39:4 67:8
entitlement 31:5
entry 18:17 60:14
    66:24
envelope 5:21
Esq 2:15
establish 14:1 21:1

43:18 47:10 50:18
    56:12,22 63:2
established 36:12
establishing 35:4,7
    36:15
establishment 50:6
et 20:2 26:21
even 23:18 30:4
    41:13 62:4,18 65:3
event 49:24 66:12
ever 68:4
every 32:24
everybody 6:15 7:2
    7:19 8:25
everybody's 67:13
everything 20:20
    29:2
evidence 9:14 10:1
    13:21 14:12,15
    15:6,11,22 21:10
    24:1,7 25:11 29:24
    32:16 45:22 46:3
    49:1,8 53:18,25
    54:15 55:17 61:1,8
ex 62:4,9
exactly 31:19 36:1
    36:19,21 57:19
examination 3:4,5
    9:14,24 10:7 23:12
    24:7 37:18 38:25
    42:2
examine 13:21,25
    51:6
examined 10:19
    37:19
examining 19:6
example 44:7
exceeded 63:1
except 23:19 28:4
    38:12 39:23
excluding 31:25
excuse 33:1
executed 20:6
exhibit 10:24 11:1
exist 43:18 63:14
exit 6:17
expand 53:12
explain 6:9
extent 13:25 14:2
    23:19 34:9 38:13
e-mail 24:4 26:7,10
    26:11 62:21

          F
F 35:22 37:1,17
face 53:13

fact 14:3 15:20 19:4
    35:11 49:12 52:8
    53:15 54:14 59:9
    59:21,22 60:1 63:8
    63:11
factor 31:8
factors 27:11
facts 17:6 20:24 21:2
    25:24 41:22 50:4
    62:20 63:14 67:5
    67:22 68:2
factual 14:12 16:13
    24:5 30:10 47:11
    49:13 61:22 62:3
    62:14
factually 58:8
fails 62:15
failure 65:23
fair 31:23 32:3 54:23
false 56:16 59:20
family 19:20,23
far 33:12 57:22 63:1
fathom 68:1
FBI 37:22
February 17:1 18:9
    22:17 31:6,13
    66:20
federal 26:19 71:19
felony 64:25 65:5
few 32:8
field 33:22 36:7
fifth 28:9
fight 37:7
file 4:11,13,17 53:11
filed 5:11 8:19
files 32:4 53:7
find 30:18 60:20
    63:23,25
finder 15:20
finding 62:8
fine 13:19 35:3 42:10
    51:2 54:7 69:25
    72:6,11
finished 61:13
first 5:15 11:5,12
    37:8 45:14 50:24
    51:1 57:16
first-hand 49:5
fishing 40:19
fit 35:18 41:17 44:8
fits 37:22 42:8 44:3
five 26:3,11
flagrantly 29:9
floor 66:24
flying 40:11
focusing 52:7

followed 12:17
following 65:22
follows 10:17
football 52:10 66:14
force 10:6 64:11,12
    64:15 65:1
foregoing 73:5
foreign 37:11
form 36:25 48:13
forth 17:6 37:17
    69:22 72:13
forward 64:8
found 4:20 68:10,23
    69:4
foundation 20:22
    36:15 56:25
four 23:25 24:14
    25:10,15,18 26:12
    59:7
frame 66:1
framework 44:14
Fredericksburg
    53:20 66:4
from 4:8 7:8,8 10
    9:20 11:24 12:18
    12:25 13:18 18:4
    19:14,20,21 24:1
    26:8 27:18 28:1,11
    30:14 32:1 37:24
    39:14,16,18 40:14
    42:18 45:9 46:12
    46:15 48:16,20
    54:21 55:13,13,14
    61:6,9 63:11,14
    68:10,11 69:21,23
    70:2,5,12,12 73:6
front 24:16
full 63:8 70:1
further 6:10 60:18
fuzzy 30:8

          G
game 52:10 59:5
    66:14
Garland 22:19 55:21
    55:24 56:18 71:8
garnered 18:4 63:11
gave 4:22 47:3
general 37:3,14
generally 10:4
General's 7:9 20:8
getting 18:24
give 15:7 24:5
given 33:20 63:7
gives 53:5
giving 27:19 52:6

**go** 6:21 7:3,18 12:2,4
  13:7 15:8,9 16:4
  17:3 22:8,14 27:8
  30:12 32:22 33:6
  40:19 52:5 53:6
  58:13,21 59:2,20
  64:7 69:3 72:12
**goes** 12:2 13:3,9 27:3
  27:5 28:12 31:7
  59:14,17
**going** 4:23 7:3,9,14
  8:14,18,19,20
  13:20 15:7,8 22:8
  22:14 23:2,23
  24:24 27:17 28:14
  30:21,21 39:8 40:2
  40:18 41:8 44:2,13
  54:5 55:17,18 59:6
  60:25 65:15 68:4
  69:6 71:22 72:4,15
**gone** 37:19
**good** 39:14,18,22
**gotten** 30:2
**Government** 4:5
  5:10,14 8:10 10:1
  28:12 38:11 62:25
**Government's** 10:24
  45:4 58:15
**grand** 36:6 42:18,21
**grant** 71:22
**great** 57:3
**guess** 65:16
**gym** 66:25

**H**
**hallway** 5:9
**hand** 24:15
**handwritten** 5:21
**happened** 62:2
**happy** 42:9
**hard** 26:23 39:25
**having** 7:13 71:14
**hay** 57:8
**heading** 23:22
**hear** 21:5 47:4
**heard** 41:16 47:4
  48:2
**hearing** 9:2,22 14:8
  30:24 56:10 67:8
  70:8
**hearings** 33:25
**hearsay** 47:25 48:11
**heart** 72:18
**help** 22:22
**her** 12:18
**Hey** 5:5

**Hicks** 7:8
**him** 13:4,4,5,5 24:15
  47:14 48:10 49:24
  53:7 63:7 67:17
  68:17,19 69:12,13
  69:22 70:4,5,8,21
**history** 17:8 52:20
  52:22
**home** 12:18
**Honor** 4:18 5:4,6,7
  6:6,19,23,25 7:7,23
  8:8,23 9:18 12:3,19
  13:13 15:2 16:10
  16:14 17:16 18:22
  18:24,25 20:19
  23:14 24:12,20
  25:23 27:1,6 28:7
  28:12,18 30:25
  32:9,18,20 34:25
  35:22 36:13 37:5
  37:22 38:4,18
  40:20 41:23 43:15
  43:23 44:17 46:1,5
  46:25 47:5,8 48:4
  49:6 50:1,17 51:18
  53:4 54:1,7,10,12
  55:3,10,15 56:2,6
  57:2,5 58:4,16,24
  59:13 60:4,19,21
  61:3 62:16 64:2,10
  65:3,9,20 67:4,20
  69:18,19 71:10,15
  71:20
**Honorable** 1:10 2:1
**Hood's** 22:13
**hour** 69:2
**hours** 12:10,15
**Hudson** 2:10 3:5 4:6
  4:14,19,22 5:7,23
  6:1,11,24 7:7,17
  8:9,23 9:7,23 10:8
  10:11 12:19,21,22
  13:12 16:10,16,24
  17:3 18:22,25
  20:19 23:14 27:1,3
  28:6,11 32:9,12,18
  33:10,11 35:21
  36:2,12,16 38:3,9
  38:18 41:23 42:1,6
  42:11 44:16 45:16
  46:1,5,25 47:5 48:4
  48:8 49:6 50:1,3,17
  50:23 53:21 56:2,7
  57:1,6,12 59:13
  60:4,10,19,25
  62:16,18 64:2 65:3

  67:4,19,20 69:16
  71:3,10,19 72:10

**I**
**identifying** 17:7
**illegal** 29:9,19
**illogical** 44:13
**immediately** 10:1
**inaccurate** 56:16
  58:8,10 60:3
**inaction** 44:25
**incarcerated** 62:24
  71:4
**incarceration** 66:18
**incident** 18:10 50:5
  52:6,8 66:2
**incidents** 18:8
**includes** 35:23 65:18
**incorporation** 44:9
**incredible** 14:6
**independent** 61:23
**indicate** 19:15 22:17
  45:10 46:7 48:25
  65:21
**indicated** 39:3 68:12
  69:8,12
**indicates** 70:21
**indirect** 40:13
**individual** 7:23,25
  71:17
**individually** 22:22
**information** 7:2 18:4
  19:13,14,19 23:16
  26:3,4,8,11,12 27:7
  30:23 46:15,18
  48:16 51:12 54:21
  59:16,24 63:6,7,11
  63:17
**inquire** 58:21
**inquiry** 55:18
**Inspector** 9:10 42:12
**instances** 48:20 52:2
**intend** 37:13 58:1
**intended** 58:9
**intending** 22:10
**interest** 72:17
**interview** 47:15,18
  47:22 48:1,14
  69:20
**interviewed** 48:6
  67:25
**interviews** 18:10,14
  23:10 38:16,20,22
**investigation** 32:5
  63:16
**investigative** 18:5

  38:7
**investigator** 71:8,21
**involved** 11:16 16:22
  17:23,25 20:2
  21:17,20 49:24
  50:9 52:8 53:17
  55:25 56:9 66:3,13
  66:15
**involvement** 16:8,14
  56:23,24
**involves** 64:19,25
**involving** 54:15
**irrelevant** 67:23
**issuance** 24:9
**issue** 12:25 15:15
  25:14 29:6,8,10
  30:1,3 31:8 35:8
  37:25 61:17
**issued** 20:12 63:22
**issues** 27:11 50:16
**items** 21:20

**J**
**jail** 47:18,21 55:7
**James** 1:7 4:3
**January** 66:16
**Jean** 2:10
**jeans** 67:1
**Jenks** 33:23,24 34:1
  34:2,15 35:18
  37:23 61:17
**Jessica** 7:24
**jig's** 31:2
**joint** 5:18
**judge** 1:11 2:2 7:21
  20:13
**judicial** 61:20 62:10
  63:13
**July** 53:1 66:3
**June** 31:24
**jurisdiction** 20:17
**juror** 58:25
**jury** 36:7 42:18,21
  57:3 58:20
**just** 4:7 6:14 7:2 8:1
  8:4 9:8,20 10:6
  11:14 12:24 13:2
  15:19 19:16 21:9
  22:13 25:17 27:16
  28:21 31:2,11
  33:11 34:12,23
  35:18 37:5,21 43:7
  43:14,19 47:13
  51:9 52:15 53:3,7
  57:7,16 58:12
  62:18 68:1 72:11

  72:16
**J&D** 49:17

**K**
**Karina** 1:25 2:2
  73:10
**keep** 9:19
**key** 61:10
**kind** 31:20 36:18
  42:25 66:25 69:1
**knew** 28:20,20 70:20
**know** 4:23 11:23
  12:12,13,14,16
  17:22 20:14,14
  23:8,22 27:17
  28:16,17 31:22
  32:2 33:1 37:1
  43:16 46:17,22
  49:20 50:11 52:11
  52:12,13,16,17
  55:21,24 58:18
  65:17 66:7 69:7
  70:4,5 71:12,13
  72:17
**knowledge** 18:4,23
  19:8,13 49:5
**known** 30:4 57:11,12
**knows** 5:11 7:1
  56:18,21 59:15

**L**
**L** 1:25 2:2 10:15,15
  73:10
**lacking** 61:21
**land** 40:14
**language** 58:11
**large** 2:4 73:11
**last** 11:6,12,12,22
  23:23 56:15 57:9
**late** 66:6
**later** 21:11,25
**latitude** 27:19
**Lauziere** 3:3 9:10
  10:12,22 42:3,12
  59:15 60:24 71:11
  71:18
**Lauziere's** 33:14
  44:19
**law** 2:15 14:1,4,5,9
  14:16 15:14,23
  17:22 19:21,22
  34:15 46:15,22
  54:21
**laws** 27:15
**lawyer** 39:22
**lay** 15:19 30:10

56:24
laying 20:22
leads 26:1
learned 46:8
least 13:22 34:8
  37:18 53:13
leave 50:25
led 52:3 66:17
leeway 15:7
legal 16:11 21:7,8
  29:19
length 56:23
Leon 25:8 47:7 61:4
  61:10
Les 3:3 71:11
less 7:3 28:25 55:16
let 4:1 15:5 22:8,14
  39:7 40:18 42:2
  43:19 51:9 62:6
  68:4 69:7
letter 4:8,16 5:17
  28:4 31:25 62:22
  70:11,21
Let's 32:22
like 12:24 23:2 29:11
  38:1,24 40:21 53:6
limited 34:2,3,4
Linda 7:7
line 11:6,12 28:10
listen 41:9 46:8 55:4
listened 46:13
litigated 37:9
little 6:10 32:13
  53:12 65:17,18
local 16:22 17:22
location 12:18
long 7:22 15:11,12
  22:16 44:15 53:17
  53:19 61:2
look 11:11,14,24
  23:9 25:17,18
  27:15,15 40:15
  49:21 53:7,9 64:12
  67:21
looking 26:7,10
  27:14
lumps 50:14

**M**

made 6:3 13:14,16
  23:11 34:18 35:24
  36:4,6,10,25 40:22
  42:18 43:3 44:24
  45:1,2 56:18 61:4
  70:10,10
magistrate 4:2 20:13

20:15,16
magistrates 61:12
mail 24:3
main 2:11 9:9
make 8:4 15:21
  20:11 21:11 34:23
  37:7,15 61:22
  69:14
makes 15:25 23:1
making 57:7
man 15:14 63:24
many 11:15,19 12:15
man's 33:22
mark 8:18
marshal 6:16 72:16
marshals 69:21
  72:12
Marvin 2:15
material 26:15 33:23
  33:24
materials 23:5,7
  24:13
matter 7:22 14:1,4,5
  14:9,16 15:13,23
  21:7,8 55:20 70:11
  73:7
matters 5:9 7:15 9:3
  39:11
may 6:24 23:7 34:24
  42:1 43:6 53:16
  60:21 62:16 64:1
  65:2
maybe 11:17 32:12
  32:14 68:16
mean 9:19 18:20
  19:23 34:21 37:9
  51:10
means 25:13 44:21
mechanical 43:1
meeting 16:7,9,15,22
  16:25 17:18,19,24
  62:5,10
mention 19:25
mentioned 5:16
  21:21 47:19
merges 53:24
merits 63:8
Messenger 24:4
middle 36:15 59:5
might 25:13 57:3
Miller 2:15 3:4 4:5,9
  4:11,14,18 5:3,6,8
  5:17 6:6,19,23 7:5
  7:16,21 9:2,4,17
  10:20,20,21 11:3,8

12:3 13:9,14 14:2,7
  14:20 15:2,18
  16:13,20 17:1,16
  18:23 20:22 21:1,4
  21:8,10 22:10,14
  23:24 24:19,22,25
  25:5,8,22 27:5,10
  28:8,16,22,23 29:5
  29:16,22 30:9,25
  31:4 32:20,23 33:5
  33:8,16,23 34:19
  34:23 35:6 36:9,14
  37:5,21 38:3,6,12
  38:21 39:3,22 40:4
  40:15,20,25 41:6
  41:10,12,20 43:6
  43:10,14,23 44:1,5
  47:7,10 49:10 50:8
  50:14,17,22,25
  51:6 53:3,22 54:1,7
  54:9,12 55:2,9,15
  56:5,15,22 57:5,9
  57:14,19,24 58:1,4
  58:9,14,23 59:3,8
  60:17,21 61:2
  64:10,23 65:9,20
  67:5,7,14 68:7,20
  69:11,19 70:7 71:2
  71:7,11,15 72:1,6
  72:11
Miller's 64:7
Mills 22:19 24:1
  55:22,25 56:18
  71:8,15,20
Mills's 56:8,23
minor 5:16 9:11,11
  12:23 17:8 50:21
  51:20,23,23,24
  52:3 62:21,23,25
  71:5
minute 57:15
minutes 7:4 12:15
  23:24 59:7
misspoke 64:3
more 11:18 17:14
  30:19,19 52:10
  61:19 65:3 72:13
morning 4:20 68:8
  69:2,20
most 11:21 31:24
motel 12:9 20:17
motion 4:9,12,15
  5:18 8:10,12
motivation 65:12
motorcycle 53:17,19
  66:3

move 5:14 41:15
much 12:1
must 27:14
muster 62:8,11
myself 22:25

**N**

N 2:8 3:1
name 5:16 56:8
nature 17:9 49:1
  64:25
na-na 40:14
need 8:9 20:23 25:14
  25:23 30:10 37:7
  40:2 54:4 70:4,5
needed 68:17
never 29:12,15 67:2
next 41:15 54:13
  55:9,20
night 53:17,19
nine 46:7 47:2
Notary 2:3 73:10
note 9:9
notes 32:4 33:14,22
  34:17 36:7,20 38:7
nothing 12:22 17:11
  50:6
November 1:13 2:5
  4:8 49:11,24 50:4
  50:10 51:10,11
  52:7 66:12
number 4:2 12:6
  66:2

**O**

oath 33:18
object 67:21
objecting 48:9
objection 6:5 7:13
  9:12 12:19,21 15:1
  16:10,19 17:3
  18:22 19:7 21:15
  27:1 28:11 32:9,18
  34:22 37:3,4 38:18
  39:2 41:14 45:5,16
  46:1,5,25 47:5 48:4
  48:12 50:1 53:21
  53:23 54:6,8,11
  56:2,7 57:25 59:13
  60:4,12 67:4 71:10
objectionable 19:3
obligated 15:21
observations 41:16
observe 18:16
observed 35:19
obtained 24:1 26:8

26:12,22 31:15
obtaining 22:1
obviously 5:11 28:5
occasion 18:16 45:1
  45:3,8
occasions 51:17
occur 13:6,7 23:12
occurred 20:17 71:1
off 21:23 30:21 36:14
  40:14 43:19
offense 61:8 64:14
  64:16,24 71:1,5
offenses 49:2 63:24
offer 13:20
offered 16:2
office 2:11 7:9,11
  20:9 22:3,21,23,25
officer 7:14 12:5
  47:3 67:25 70:12
  71:7,16,25
officers 12:11 16:23
  18:10,14 19:14,21
  19:22 46:16,23
  54:22
official 11:9 61:20
  62:11
oftentimes 39:20
okay 6:23 18:3 19:12
  19:18 20:7 22:5
  24:12,19 28:2
  45:21 48:25 54:23
  55:11
old 36:3
once 58:20,25 72:13
one 6:8 8:6 12:6,24
  13:18 17:1,4 22:24
  24:22 35:6 40:12
  43:6 49:18,19,21
  51:16,21 52:9,14
  53:11 55:2 61:11
  61:17,18,18 66:2
one-on-one 62:5
online 11:15 24:3
only 5:1,15 8:16
  13:24 23:23 62:19
  63:22 65:11
open 4:13,17 8:19
  37:13
opened 8:16
opportunity 36:23
  50:18
opposed 48:1
oral 43:2
Orange 68:14,25
  69:21
order 8:10,16,20

41:4
**original** 4:10,15,24
8:21
**other** 4:7 6:8 17:12
18:14 19:12,18,21
22:21 23:12 25:11
25:15 27:11,25
30:13 31:24 34:15
36:23 38:20 39:16
40:5 43:21 45:8,13
45:21 52:14 56:9
57:23 60:17 63:13
64:24 69:1
**others** 18:5 38:23
43:12 47:25 48:17
48:21
**otherwise** 34:6,12
36:2 37:16 40:23
43:2 44:22 63:5
67:15,16
**ought** 40:4
**out** 4:20 7:3,19 22:15
23:9 40:1 66:6
68:5,10,23 69:4
**outside** 30:14 45:22
46:3 65:24
**over** 11:19,19,21,22
39:9 42:2,9 68:9
**overall** 35:4
**overrule** 19:6
**Overruled** 34:21
45:17
**own** 15:21 17:17
38:6 45:7 49:5
61:23
**ozone** 28:21

**P**

**P** 2:8,8
**page** 8:5 11:7,8 12:7
58:17
**pages** 5:25
**pants** 40:10 59:21,22
**paper** 8:15
**paragraph** 11:6,12
12:6,24 13:18 17:1
17:4 20:1 21:22
22:18 23:25 24:14
25:10,15,18 26:3
26:12,19 27:24
28:9 31:4,14,16
33:11,12 35:21
37:1 45:9,10,12,20
46:7,10,14 47:2,15
47:16,19,19,20,24
48:25 49:2,3,9

50:24 51:4,7 56:5
56:16 57:1 58:17
58:21 59:9,16
64:22,23 65:4
**paragraphs** 61:3
**parameters** 15:9
**parents** 19:23 66:7
**parole** 70:12,20
**parse** 23:9
**part** 6:3 8:21 11:9,13
23:8 25:2
**parte** 62:5,9
**particular** 23:21
38:13
**parts** 41:7
**pass** 58:20,25
**past** 17:8
**PC** 56:11
**penalty** 10:14
**people** 7:19 47:21
48:1 63:5,12 70:5
**period** 12:10,12,14
66:17
**perjury** 10:14
**permissible** 26:1
**permission** 6:2
**permit** 9:25 13:6
**permits** 67:9,12,14
**permitted** 13:6
**person** 4:4 15:16
23:22 35:14 36:24
48:22 65:2
**personal** 19:13 26:21
**personnel** 6:15 47:18
**pertaining** 42:18
**pertains** 41:19,20
**phone** 68:14
**photographs** 18:16
18:20,21 19:10
59:10 60:2,8,13,16
66:21 67:3
**physical** 64:15 65:1
**pieces** 48:24
**pin** 14:24 31:19
**pitiful** 65:17,18
**place** 16:9 18:1
39:25 72:3
**placed** 6:13
**plain** 58:10
**played** 46:23
**please** 11:5 22:22
33:8 60:22
**pleases** 7:23
**point** 6:8 24:19
35:13,14 37:7 44:2
69:17

**points** 60:22 61:11
**police** 16:8,14,21,22
18:5,9,15,17 59:10
59:23 66:20
**portion** 9:9
**position** 15:2 34:24
39:12,15,21,24
63:12,13 64:3
**possession** 21:24
22:6 42:25
**preamble** 12:4
**precision** 40:16
**predicate** 30:10
47:11 61:22 62:14
**prefer** 10:8
**preference** 61:14
**preliminary** 9:2,13
9:25 14:8 33:25
37:17 41:3
**premature** 32:13
69:17
**preparation** 43:12
**preparing** 38:17
46:9,13
**present** 4:3 6:25
18:12,15 24:8 49:3
49:14 51:16
**presented** 14:12 24:8
24:12 25:12 41:21
66:8
**preservation** 43:6,15
**pressed** 39:12
**presumption** 64:6
**pretrial** 7:15 29:2
67:25 68:6,7,11,18
68:21 69:3,24 70:2
71:23,25
**previous** 33:21 34:18
45:1,3
**prime** 71:8
**prior** 17:5,10
**prisoners** 47:16 48:7
48:14,17,22
**probable** 12:1 13:3,7
13:16 14:1,17,18
15:17 17:4 22:9,11
25:4,6,21 26:2
30:20,24 35:5,7
41:11,22 50:7 59:7
60:20 61:5,7 62:8
63:2,10,15,23,25
**probably** 11:17,21
**probation** 7:13 55:6
70:12,19,25
**problem** 10:3
**procedural** 35:9

**Procedurally** 42:5
**procedure** 24:25
**proceed** 9:23 64:1
**proceeding** 33:18
62:7,12
**proceedings** 1:10 2:1
9:21 35:3 49:4,15
73:6
**process** 16:3 62:13
**produce** 41:4 43:17
**produced** 38:24
54:25
**producible** 34:12,14
35:19 40:7
**proffer** 11:3 67:9,22
**proffering** 67:7
**proof** 65:11
**proposition** 16:2
20:23,25 21:6
**prosecutor** 70:14
**prove** 23:21 54:4
**provide** 22:19 23:4
**provided** 26:4,14
61:20 62:4
**provision** 41:5
**provisions** 34:15
**public** 2:3 6:4 73:10
**purpose** 17:7,18 46:9
58:5
**purposes** 9:15,25
58:7
**pursuant** 27:23 64:3
**put** 6:9 8:6,11 10:1
39:8,21 40:13
44:14 60:21 65:16
71:24
**putting** 9:20

**Q**

**question** 11:15,25
15:12 16:11,14
17:21 19:1,2,7,17
23:2 24:20 27:20
29:23 31:10,12
32:1,25 33:15
35:11,12,13 41:3
41:14,15,24 43:7,9
45:15,18,25 48:6
48:13 49:13 54:13
55:20 58:13 59:17
60:10
**questioning** 12:1
**questions** 13:10
30:18 40:18 42:3
47:14 57:23 60:17
60:18

**quit** 22:9
**quizzical** 11:24
**quotes** 7:24

**R**

**R** 2:8 10:15
**raided** 66:20
**raising** 12:25
**reached** 45:11,14,19
61:21 62:1,3
**read** 18:6 29:13 33:7
36:19 50:8 53:6
**reading** 50:23 51:4
58:10 65:17,19
**real** 7:22
**realize** 72:14
**really** 30:17 37:1
39:11,13
**reasonable** 14:16
15:16 63:21
**reasonably** 63:13
**reasons** 64:8
**recall** 49:20 51:21
**received** 4:7
**recital** 36:3
**recognized** 7:12
**recollection** 34:9
52:25 53:24 68:17
**reconvene** 72:9
**record** 4:1,6 6:4,9,13
6:22 7:22 8:1,11,13
9:8 15:3 18:20
20:8 22:2 25:2
34:16 35:15 37:6
37:21 39:9 43:7,15
44:16 52:20,23
53:3,4,8 54:9 55:14
56:21 60:22 62:18
67:6 70:11 71:12
73:6
**recorded** 25:2 36:4
43:2
**records** 20:3 26:6
45:12,13
**redacted** 5:15 6:2
**refer** 11:5 35:21
**reference** 20:12
21:11 22:20,20,23
23:11 27:22 31:14
44:9 45:12 49:8
61:4
**referenced** 26:24
28:3 31:16 40:6
47:16 49:2
**references** 33:2
49:10

production@cavalier-reporting.com
(Fax) 434.975.5400                Cavalier Reporting, Inc                www.cavalier-reporting.com
(Direct) 434.293.3300

referencing 48:10
referral 22:23
referred 9:6
refers 9:10 26:19
  33:12
reflect 4:1,7 8:3
  32:15
reflected 66:18
refresh 52:25
refused 67:24
regard 33:14 43:3
  61:1 62:15
regarding 12:22 18:8
  32:16 45:20
related 47:25 65:25
relates 20:5 28:23
relating 9:15 49:15
relationship 49:1
relative 28:18 51:20
  51:23,24
release 70:22 71:1
released 64:9 70:16
  70:18
relevance 50:3 56:3
  56:5
relevant 14:9 28:15
  28:17 69:10
reliable 63:6
relied 23:5 38:16
  41:3 42:14,19
  43:12 53:12 61:11
  62:19
rely 10:5 38:24 63:13
relying 35:2
remember 57:17
  68:15
removing 5:15
report 46:12 53:14
  70:22
reported 1:25 26:16
Reporter 1:25 2:3
  73:1
reporting 48:17,21
reports 18:5,5,9,10
  18:15 38:15,19,22
representation 8:7
  45:4 68:2
representations 6:12
  42:14 70:9
representative 6:17
represented 4:6 70:8
request 6:12 23:4
  28:6 43:17
requested 9:22 22:18
  40:21
require 64:11,20

required 63:18
requires 65:10
respond 62:16
rest 15:19 51:2
retained 4:4
retry 55:17
review 26:5,15 45:11
  45:21,22 53:4
  60:13,16
reviewed 20:4 24:13
  26:18 60:7
reword 16:20
Richmond 22:4 44:6
ride 53:17,19 66:3
right 5:3 7:18 10:18
  10:20 11:4 18:17
  43:24 44:20 53:11
  53:11 55:15 58:4
  58:15 59:10 60:14
  65:20 66:24
rise 52:6
risk 27:11 28:24 29:1
  65:1
road 15:8
Roanoke 4:21 69:5
Robin 22:13
rock 39:25
room 2:12 12:9
  59:11
round 22:13
rule 33:2,2,3,17 34:3
  34:4,8 35:19,22
  37:12 39:5 41:14
  43:20 58:24 67:21
ruled 60:5
rules 21:15 34:10
  35:9 36:20 42:7
  59:5 67:15
ruling 40:8,9 43:16
  67:16
ruse 30:16,17

————— S —————
S 2:8 10:15
same 8:5 9:21 22:24
  28:11 44:23
save 69:21
saying 57:17
says 17:18 29:4
  32:20 44:20 49:7
  49:11 50:13,13
  53:22 57:6,9,10,14
  57:21,21 61:24
  64:23
scene 18:17
scheduled 72:7

seal 5:18 6:13 8:3,6,7
  8:14
sealing 6:7
search 20:6,12 21:18
  21:23 26:13,20
  27:23 31:15 40:6
  44:6
seat 40:10
see 65:6,18
second 15:25 51:1
  61:18 65:15 66:12
secondhand 26:17
secret 62:5,9
section 64:4 65:6
sections 65:6
see 12:8 19:9,10
  25:24 33:12 36:7
  49:21 53:1,10
seeing 49:9
seeking 70:23
seems 12:24
seen 18:19 29:12,15
seizing 21:20
seizure 20:1,3,5
sense 44:11
sent 4:14,19,19 62:21
  70:20
sentence 11:12 50:24
  51:1 55:7,10 56:15
  57:10 58:11
sentenced 55:6
separate 12:25
series 13:9 25:24
served 36:21
service 72:17
services 29:2 67:25
  70:2 71:25
set 37:16 72:14
sets 17:6
setting 16:15,22
  17:23
seven 31:4,15 45:10
sexual 45:20 50:9,10
  54:15,16 66:10,10
  66:15
shirt 67:1
short 6:20
shorts 66:25
shots 40:11
show 25:4,5 28:15
  60:2
showed 53:18 60:14
  66:22
showing 23:19
shown 4:13 67:2
signature 4:10

signed 35:25 36:11
  36:13 38:15,19
  40:23 42:13
similar 26:11
simple 31:11 49:13
since 18:15 69:20
sir 5:23 6:1 7:17 9:7
  10:11 11:15 32:12
  33:5 71:2 72:10
sit 23:3 30:22 41:8
six 26:19 27:24 28:9
  31:16
Smith 4:20 68:11,12
  68:14,23 69:4,7,12
  72:15
some 5:24 6:11 15:7
  17:8 23:7 27:19
  30:4 31:20 32:7
  40:6 45:1,2,8 48:20
  48:24 59:19 60:25
  66:25
somebody 45:6
someone 26:6 46:12
  48:21 61:24,24,24
  61:25 62:1 69:11
  69:13
something 26:16
  29:19,20,22,25
  32:25 36:23
soon 68:21
sorry 5:3 7:21
sort 70:2
source 19:12 46:17
  54:19
sources 23:20 26:9
  28:1 63:6,12,17
speaks 51:8
Special 7:10
specific 54:2 65:4
specifically 65:7
  68:15
spent 61:19
spoke 47:21,23
stamp 8:19
stamped 8:18
stand 10:19 54:24
  62:8,11
standpoint 63:15
start 43:19
starts 43:20
state 7:6 20:12,13,13
  20:20,21 21:18,23
  49:15 66:2,5 71:16
stated 30:20 62:13
statement 14:3 33:13
  33:21 34:1,2,18

35:1,23,24 36:4,5
  36:18 37:2 40:22
  42:13 43:3 44:7,10
  44:17,18,19,21,24
  44:25 45:2,6,7 55:5
  58:8 59:20
statements 33:4
  34:11,13,14,17
  35:10,16 36:10,24
  37:15,23 38:23
  39:4 40:5,17,21
  41:17 43:11,25
statement's 60:2
States 1:1,3 2:6,9,10
  6:16 11:24 30:5
statute 27:12 29:17
  65:10 67:9,12,14
statutorily 65:7
statutory 29:21
stay 6:24
stayed 22:15
stays 7:19
stenographic 43:1
step 60:23
still 18:21
stipulate 20:20
Street 2:11,16
strength 29:6,7,10
  29:16,18 30:1
strike 51:1 54:3,5
  59:2 61:5
striking 55:12
struck 58:19
stuff 39:10,11,18,19
  70:2
subject 17:5
substantial 65:1
substantiality 55:19
substitute 5:14 8:17
substituted 8:20 11:2
successful 64:21
sufficient 8:13
superfluous 39:10
support 41:22 46:4
  66:11
supports 16:1
suppose 11:17
supposed 39:19
sure 8:4 38:5 60:23
  62:17 69:6,14
surveillance 12:10
  12:13,14
sustain 14:25 16:18
  34:22 37:2,4 39:2
  45:4 48:12 53:23
  54:6,8,11 57:25

60:11
**sustained** 16:12
  21:16 41:25 46:2,6
  47:1,6 56:4 59:18
**swear** 10:12
**switch** 42:1
**sworn** 10:16 40:5
  43:11
**system** 58:20

**T**
**take** 9:5 10:19 13:18
  16:9 18:1 72:2
**taken** 2:2 36:5 53:19
  60:14 66:23
**taking** 40:11 44:14
**talk** 31:5 68:18,21
  69:11,13,24
**talked** 68:9,12,20,24
**talking** 16:25
**talks** 17:19 49:12
  71:23
**task** 22:16
**tee-shirt** 67:2
**telephone** 46:8
**tell** 4:10 21:9 25:7
  30:6 39:7 51:15,22
  52:1
**tells** 48:22,23,23
**temporarily** 6:18 7:3
**ten** 47:16
**tender** 10:6 70:13
**tendered** 10:24
**tendering** 4:15
**terms** 55:6
**testified** 33:17 42:21
  43:22 63:4
**testifies** 10:16 35:15
**testify** 10:13 67:17
  70:18
**testifying** 35:8,17
**testimony** 25:1 34:3
  34:4,5 42:18 66:8
**Thank** 4:18 5:6 8:23
  33:8
**their** 18:17 28:23
  29:10
**themselves** 45:13
  46:20
**thing** 24:22 35:7
  44:23 57:16
**things** 25:19 29:3
  38:14 41:4
**think** 8:12 12:3 15:9
  15:18,19 16:2
  18:25 19:1 23:14

24:23 27:3,7 28:12
  30:16,17,22 31:2
  33:14,17 36:16,17
  36:18 37:19 39:15
  41:6,23 44:1,3,10
  48:5,8 53:4 59:14
  59:14,16 67:22
  68:10 70:3,16
  72:12
**thinking** 37:11
**third** 28:9 48:22
**third-hand** 47:25
  48:11
**Thomas** 7:8
**though** 25:11
**threatened** 64:15
**three** 22:18 23:24
  36:4 59:7
**three-month** 55:7
**through** 33:11
**time** 9:21 12:12,14
  20:6 21:15,25
  23:13 24:14 26:23
  28:2,7 30:13 31:18
  31:21 32:24 33:21
  35:2,13,14 37:12
  44:15 49:14,18
  55:2 59:19 65:25
  66:9 68:24 69:23
  69:24 71:6,23
**timeliness** 27:10 31:7
**Title** 56:13 64:4
**today** 9:3 10:10,13
  41:18 69:20
**together** 50:15
**told** 47:4 48:18 57:16
  59:25 68:17
**top** 28:9,10
**totally** 18:7,11 28:21
  32:19 37:10
**toward** 30:20 33:20
**trail** 13:5
**trailed** 13:5
**transcribed** 2:2
**transcript** 42:17,25
  43:2 62:20 73:6
**transcription** 36:6
**trial** 35:8 41:10
  53:18 54:25 59:4
  63:8
**trials** 33:24
**trick** 31:21
**tried** 72:13
**trier** 35:11
**trouble** 39:8 69:22
**true** 14:23 37:10

52:12 59:20 63:8
**truth** 51:8
**truthful** 10:14
**try** 13:12
**trying** 15:3 31:2,19
  36:22 37:6 39:13
  39:17 50:15 71:11
**Tuesday** 68:10
**turn** 42:9
**turning** 12:6 45:9
**two** 7:4,19 23:23
  26:8 28:1 41:6
  49:19 50:14 54:17
  58:17 59:9,16
  66:16
**two-step** 16:3

**U**
**U** 10:15
**uncover** 26:23
**uncovered** 27:21
**under** 4:8 6:13 8:3,6
  8:7,15 10:14 12:10
  12:13,13 25:8
  27:12 29:16 31:8
  33:16,18 34:15
  35:19,20 36:8 37:9
  39:5 40:7 47:7
  61:4 64:18 65:5,10
**underlying** 67:23
  68:3
**understand** 13:2
  25:22 42:6 43:23
  44:4,12 60:11
**understanding** 13:23
  54:18,20
**understood** 40:8
**United** 1:1,3 2:6,9,10
  6:16 11:24 30:5
**unknown** 57:10,17
**unless** 25:3 30:18
  67:15 68:5
**unredacted** 5:18 6:7
  8:2
**unsupported** 25:9,16
**until** 69:25 71:23
**use** 26:13 58:19
  64:10,11,14,14,15
  68:19
**used** 65:2
**using** 24:3
**U.S** 2:11 4:3 7:10
**U.S.C** 64:18

**V**
**validity** 13:22 51:7

**verbal** 6:11 65:11
**verbatim** 36:3
**verifications** 70:1
**version** 5:18,20 6:3
  8:15,17
**versus** 4:3
**very** 11:11 40:14
  62:19
**victim's** 19:20
**videos** 18:21
**videotapes** 19:9
**violated** 56:12
**violation** 70:23
**violence** 64:5,13 65:8
  65:13,23
**Virginia** 1:2,14 2:4,7
  2:12,16 17:10 20:5
  20:9 26:20 59:1
  66:22 73:11
**voluntarily** 26:14
**vs** 1:5

**W**
**Wait** 57:15
**wall** 39:13
**want** 8:4 10:18 13:17
  15:8 21:1 43:17
  50:11,25 53:7
  56:22 72:16
**wanted** 4:11,12
  37:14
**wants** 19:5 69:24
**warrant** 20:6,11,12
  21:18,23 26:13,20
  27:23 31:15 40:6
  44:6 63:22
**wasn't** 4:24 14:21
  30:4 60:10 68:16
**watch** 13:4
**watched** 13:4
**WAUGH** 1:11 2:1
**way** 19:5 40:13
  52:14 66:6
**wearing** 59:12
**weekend** 68:9
**well** 6:25 7:1 8:12
  9:5,8 10:5 19:4
  21:9 22:24 29:14
  30:25 31:4 33:3
  36:14 40:9 47:22
  51:9 55:7,11 58:12
**went** 61:13
**were** 16:21 17:23,25
  18:12 20:2 21:17
  21:20 22:18 25:19
  27:25,25 36:25

40:5 49:3,14 51:16
  59:21,22 60:13
  61:10 66:23 70:10
**weren't** 18:15 36:22
  69:5
**West** 2:11
**WESTERN** 1:2
**we'll** 41:15 42:8 72:8
**we're** 8:1 13:12
  60:25
**We've** 50:4
**whereabouts** 12:23
**while** 9:1 62:23
**whole** 51:4,5,7
**wholly** 25:9,16 62:13
**who've** 48:2
**willing** 58:19
**wish** 9:2
**withdraw** 13:18
**witness** 3:2 10:6,16
  19:6 21:5 33:13,20
  34:11,13,18,20
  35:2,15,17,24 36:6
  36:25 37:2 40:23
  40:24 43:21,22
  44:18,22,23 49:17
  51:14,18,24 52:4
  53:10 58:13,15
  63:4,16
**witnesses** 38:16,20
  38:22 39:5 40:5
**word** 57:18
**words** 17:17 22:21
  23:12 28:9 43:20
**work** 20:7,8
**worthy** 14:13
**wouldn't** 14:20
  47:22
**writings** 32:15
**written** 8:10 35:24
  40:22
**wrote** 33:25 62:23

**X**
**X** 3:1

**Y**
**yeah** 6:21 8:24 11:21
  22:12
**year** 66:16
**years** 11:19,20 29:13
  29:15
**yesterday** 68:25
**y'all** 40:11

**Z**

| | | | | |
|---|---|---|---|---|
| **Z** 10:15<br>**zone** 28:20 | **31.56-4** 64:12 | | | |
| **0** | **4** | | | |
| **02-M-426** 4:2<br>**02-M-426-1** 1:5 | **42** 3:5<br>**43** 3:4 | | | |
| **1** | **5** | | | |
| **1** 10:24 11:8<br>**1st** 49:11 51:10<br>52:19 53:1,17<br>**10** 3:4 11:22 47:15<br>47:19,19,20,24<br>**10th** 26:22 28:8 31:7<br>49:12,24 50:4,11<br>51:11 52:7<br>**10:00** 1:12 2:5<br>**104** 2:12<br>**11** 48:25 49:2,3,9<br>50:24<br>**11:30** 1:12<br>**12** 56:5,16 57:1<br>**1203** 2:16<br>**15** 5:24,24 11:17<br>17:1 18:8<br>**15th** 66:20<br>**17** 5:24 11:7<br>**18** 56:13 64:4,18<br>**19th** 4:8 70:13<br>**1993** 36:20 | **5.1** 32:20,22<br>**5.1(d)** 33:1 34:4<br>35:20<br>**5.1(e)** 32:23 33:1 | | | |
| | **6** | | | |
| | **6** 37:22 38:7 | | | |
| | **7** | | | |
| | **703.548.5000** 2:17 | | | |
| | **9** | | | |
| | **9** 70:13<br>**9:30** 69:5 | | | |
| **2** | | | | |
| **2** 12:7 58:17<br>**2:00** 72:9,18<br>**20** 5:24 11:17<br>**2001** 51:10,11 52:19<br>**2002** 1:13 2:5 17:2<br>18:9 26:22 28:8<br>31:6,24 66:21<br>**21** 1:13 2:5 29:13,14<br>**22.41** 65:6,17<br>**22.42** 65:7,10,18<br>**22314-3515** 2:16<br>**22901** 2:12<br>**24.22** 56:13<br>**255** 2:11<br>**26** 11:19 33:2,2,3<br>34:3 35:20<br>**26.2** 35:22 42:7<br>43:20 | | | | |
| **3** | | | | |
| **3rd** 31:6,13<br>**30th** 28:5 31:25<br>**302** 37:22 38:8<br>**31.56** 64:4 | | | | |