UNITED STATES DISTRICT COURT:

WESTERN DISTRICT OF VIRGINIA, CHARLOTTESVILLE DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES


      -vs-                         Case No.: 02-M-426-1


JAMES DANIEL BRAY,


            Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PROCEEDINGS BEFORE THE HONORABLE

B. WAUGH CRIGLER, JUDGE

10:00 a.m. - 11:30 a.m.

November 21, 2002

Charlottesville, Virginia




REPORTED BY:  Karina L. Chesbrough, Court Reporter

production@cavalier-reporting.com
(Fax) 434.975.5400          Cavalier Reporting, Inc          www.cavalier-reporting.com
(Direct) 434.293.3300

United States v. James Daniel Bray                November 21, 2002

Page 2

Proceedings before the Honorable B. WAUGH CRIGLER, Judge, taken and transcribed by Karina L. Chesbrough, Court Reporter, Notary Public in and for the Commonwealth of Virginia at large, commencing at 10:00 a.m., November 21, 2002, at the United States District Court, Charlottesville Division, Charlottesville, Virginia.

A P P E A R A N C E S

FOR THE UNITED STATES:

    Jean Barrett Hudson

    Assistant United States Attorney

    U.S. ATTORNEY'S OFFICE

    255 West Main Street

    Room 104

    Charlottesville, Virginia 22901


FOR THE DEFENDANT:

    Marvin D. Miller, Esq.

    Attorney at Law

    1203 Duke Street

    Alexandria, Virginia 22314-3515

    703.548.5000

production@cavalier-reporting.com
(Fax) 434.975.5400                Cavalier Reporting, Inc                www.cavalier-reporting.com
(Direct) 434.293.3300

United States v. James Daniel Bray                    November 21, 2002

I N D E X

WITNESS:

LES LAUZIERE

    Examination by Mr. Miller.............10, 43

    Examination by Ms. Hudson............42

* * * * *

THE COURT:  Let the record reflect that this is magistrate docket number 02-M-426, U.S. versus James Daniel Bray, who is present in person with his retained counsel, Mr. Miller.  And the Government is represented by Ms. Hudson.  The record should reflect that just the other day I received a letter under cover of November the 19th from Mr. Miller enclosing a motion, but I couldn't tell whether that was an original signature or not and whether Mr. Miller wanted to file the motion in advance or whether he wanted to file it in open court.  But a copy was shown being sent to Ms. Hudson.  And Mr. Miller is tendering to the Court the original motion and a copy of the letter.  So I'll have the clerk file it in open court.

MR. MILLER:  Thank you, Your Honor.  I had sent it to Ms. Hudson, I had sent it to Mr. Smith.  I found out this morning they didn't have it.  And he's in Roanoke and I gave Ms. Hudson another copy I brought because I didn't know who was going to get it and who wasn't.  I also brought the original in case you didn't get yours either.

THE COURT:  I didn't.  We only got the
copies.

MR. MILLER:  All right.  I'm sorry,
Your Honor.

THE COURT:  Hey, it's all cured.

MR. MILLER:  Thank you, Your Honor.

MS. HUDSON:  Your Honor, before we
begin, Mr. Miller and I had discussed briefly
a couple of matters in the hallway before
this case was called.  The Government
obviously as the Court knows filed a
complaint in this case.  There is an
Attachment C to the complaint.  The
Government would now move to substitute a
redacted Attachment C only removing the first
name of the minor children who are mentioned
in that letter.  And Mr. Miller and I have a
joint motion to seal the unredacted version
that is attached to the complaint that is --

THE COURT:  Is that the version that
was the envelope along with the handwritten
document?

MS. HUDSON:  Yes, sir.  And I have --

THE COURT:  Some 15, 20 -- 15 or 17
pages?

United States v. James Daniel Bray

November 21, 2002

Page 6

MS. HUDSON:  Yes, sir.  And with the Court's permission, this is the redacted version that we'd ask be made a part of the public record.

THE COURT:  Any objection?

MR. MILLER:  No, Your Honor.  We -- the sealing of the unredacted is agreeable.  And there's one other point, if we can approach and put that in the record to explain a little bit further the --

MS. HUDSON:  Some verbal representations that we would request also be placed under seal in the record.

THE COURT:  What I will do is just ask that everybody but the court personnel, my bailiff, and a United States Marshal representative exit the courtroom temporarily.

MR. MILLER:  Your Honor, this is so short.

THE COURT:  Yeah, but it has to go on the record.

MR. MILLER:  Yes, Your Honor.  Okay.

MS. HUDSON:  May my case agent stay present as well, Your Honor?

THE COURT:  Well, he knows the information.  So everybody else just temporarily go out.  It's going to be less than two minutes.

MR. MILLER:  Mr. Dwoskin is counsel for Mr. Bray in state court.

MS. HUDSON:  And, Your Honor, Linda Hicks Thomas is also here from the Attorney General's office and is going to be co-counsel.  She is a Special Assistant U.S. Attorney in our office.

THE COURT:  So recognized.  And is there any objection to having the probation officer here who's going to be doing all pretrial matters?

MR. MILLER:  No.

MS. HUDSON:  No, sir.

THE COURT:  All right.  There we go. We got two people out.  Everybody else stays in.

MR. MILLER:  Sorry, Judge.  For the record -- and the real long matter, if Your Honor pleases, is this.  The individual designated as "A" in quotes is Jessica and the individual designated as "B" is Danielle,

```
1         just so the record is clear as to who we're

2         dealing with in there.  And the unredacted

3         now under seal should reflect that, but we

4         just want to make sure that the case is on

5         the same page as to who it is.  And we'd ask

6         that that also be put under seal, this one

7         representation be under seal.  And that's all

8         we have, Your Honor.

9              MS. HUDSON:  And would the Court need a

10        written motion and order from the Government

11        to put that in the record?

12             THE COURT:  Well, I think the motion on

13        the record of the case is sufficient.  And

14        what I'm going to direct the clerk is to seal

15        the version that I have under a paper clip to

16        be opened only upon order of the Court and

17        then substitute for that the version that

18        was -- he's going to mark stamped -- he's

19        going to stamp it filed in open court, and

20        I'm going to order that it be substituted for

21        the original that was part of the criminal

22        complaint.

23             MS. HUDSON:  Thank you, Your Honor.

24             THE COURT:  And that's -- yeah.  And

25        that will do it.  Now you can bring everybody
```

United States v. James Daniel Bray                    November 21, 2002

Page 9

```
 1        back in.  And while they're coming back in,
 2        Mr. Miller, do you wish a preliminary hearing
 3        today on these matters?
 4             MR. MILLER:  Yes.
 5             THE COURT:  Well, and I take it that
 6        they'll be referred to as "A" and "B?"
 7             MS. HUDSON:  Yes, sir.  They are --
 8        just for the record as well, and for the
 9        Court to note, in the main portion of the
10        affidavit Mr. -- Inspector Lauziere refers to
11        them as minor "A" and minor "B."
12             THE COURT:  And is there any objection
13        to conducting currently the preliminary
14        examination and the bail, the evidence
15        relating to the Defendant for purposes of
16        bail?
17             MR. MILLER:  No, not on behalf of the
18        defense, Your Honor.
19             THE COURT:  I mean, it doesn't keep you
20        from putting on additional -- I'm just doing
21        both proceedings at the same time.  He's
22        requested a bail hearing.
23             MS. HUDSON:  Could we proceed with the
24        cross examination on the complaint for
25        purposes of the preliminary and then permit
```

```
 1          the Government to put on evidence immediately

 2          after that?

 3               THE COURT:  Absolutely.  No problem.

 4          But -- 'cause generally what you do is say,

 5          well, we rely on the affidavit and then I

 6          just force you to tender your witness for

 7          cross examination by the defense counsel.

 8               MS. HUDSON:  That's what I'd prefer.

 9               THE COURT:  Is that what you're doing

10          today?

11               MS. HUDSON:  Yes, sir.

12               THE COURT:  Mr. Lauziere, do you swear

13          or affirm that what you testify to today is

14          truthful under penalty of perjury?

15               L E S   L A U Z I E R E , called as a

16             witness and being duly sworn, testifies as

17             follows:

18               THE COURT:  All right.  You want to

19          take the stand here and be cross examined by

20          Mr. Miller?  All right, Mr. Miller.

21   BY MR. MILLER:

22          Q.   Now, Mr. Lauziere, do you have before

23       you the affidavit which I will assume has been

24       tendered as Government's Exhibit 1?

25          A.   Yes.
```

```
 1                THE COURT:  It's not an exhibit.  It's
 2       been substituted as an -- as the --
 3                MR. MILLER:  Proffer.
 4                THE COURT:  Right.
 5       Q.    Would you please refer to the first
 6       paragraph and the last line of it?
 7                THE COURT:  That's on Page 17?
 8                MR. MILLER:  Page 1 of the affidavit.
 9       A.    As a part of this current official
10       duties?
11       Q.    Yes.  And if you'll look at the very
12       last line, last sentence of the first paragraph.
13       A.    As a part?
14       Q.    Yes.  Just look at that, and then my
15       question to you, sir, is how many online
16       enticement cases have you been involved in?
17       A.    I suppose probably 15 or 20, maybe
18       more.
19       Q.    Over how many years?  Over the 26
20       years?
21       A.    Over -- yeah, probably most of those
22       over the last 10.
23                THE COURT:  You know you've got a
24            quizzical look from the United States
25            Attorney when you asked that question 'cause
```

```
 1              she's questioning how much probable cause
 2              that goes to.  Go ahead.
 3                   MR. MILLER:  Yes, Your Honor.  I think
 4              it does go to it because of the preamble to
 5              the affidavit by the officer.
 6              Q.   Now, turning to paragraph number one on
 7       Page 2.
 8              A.   Yes, I see it.
 9              Q.   Are you aware that the motel room was
10       under surveillance for a period of hours before
11       the officers entered?
12              A.   I don't know for what period of time it
13       was under surveillance.  I know it was under
14       surveillance for a period of time.  I don't know
15       how many -- if it was hours or minutes.  I don't
16       know.
17              Q.   Are you aware that "A" was followed
18       from her home to that location?
19                   MS. HUDSON:  Objection, Your Honor.
20                   THE COURT:  What's the basis of the
21              objection, Ms. Hudson?
22                   MS. HUDSON:  There's nothing regarding
23              the whereabouts or the behavior of minor "A"
24              in paragraph one.  It just seems like he's
25              raising a completely separate issue from
```

```
 1        anything alleged in the affidavit.
 2            THE COURT:  I just don't understand
 3        where that goes to probable cause whether
 4        they watched him or didn't watch him, whether
 5        they trailed him or didn't trail him, whether
 6        they permitted it to occur or didn't permit
 7        it to occur.  Where does that go to probable
 8        cause?
 9            MR. MILLER:  It goes to -- the series
10        of questions will determine whether there was
11        enticement or not.
12            MS. HUDSON:  We're not here to try the
13        case, Your Honor.
14            MR. MILLER:  They made the allegation
15        and you're to determine whether or not
16        there's probable cause.  And they've made
17        this as an allegation.  Now, if they want to
18        withdraw paragraph one and take it from the
19        Court's consideration, that's fine.  If
20        they're going to offer it to the Court as
21        evidence, then we get to cross examine the
22        validity of it.  At least that's my
23        understanding of what --
24            THE COURT:  You only get to cross
25        examine it to the extent that it can't as a
```

1    matter of law establish probable cause.

2         MR. MILLER:  Or to the extent that it's

3    not credible as a statement of fact.

4         THE COURT:  As a matter of law.  It

5    would have to be as a matter of law

6    incredible.

7         MR. MILLER:  No.  The Court in a

8    preliminary hearing can determine that as a

9    matter of law it's not relevant to the

10   determination and therefore shouldn't be

11   considered.  The Court can determine based on

12   evidence presented to it that the factual

13   basis is not worthy of consideration.

14        THE COURT:  But I would have to

15   determine that the evidence is not credible

16   as a matter of law, that no reasonable

17   determiner of probable cause could say that

18   that would constitute a basis for probable

19   cause.

20        MR. MILLER:  No, not that it wouldn't

21   determine a basis for it, but that it wasn't

22   credible, therefore shouldn't be considered.

23   If it was true --

24        THE COURT:  You can dance on that pin

25   in the Court of Appeals.  I sustain the

```
 1          objection.
 2               MR. MILLER:  The position, Your Honor,
 3          so the record is clear -- I'm not trying
 4          to --
 5               THE COURT:  I'll let you challenge the
 6          credibility of the evidence, and if you --
 7          I'm going to give you some leeway, but I'm
 8          not going to go down the road that you want
 9          me to go down.  I think the parameters are
10          clear.  So I will allow you to challenge the
11          credibility of the evidence so long as -- so
12          long as the question before the Court is
13          whether there's any credibility as a matter
14          of law.  Whether I believe this man or not
15          isn't the issue.  It's whether it could be
16          believed by a reasonable person determining
17          probable cause.
18               MR. MILLER:  I think -- and I'll
19          just -- we can lay this to rest.  I think
20          that the Court as the fact finder is
21          obligated to make its own credibility
22          determinations of the evidence not as a
23          matter of law, but as whether or not the
24          Court credits it.  Then if the Court credits
25          it, the Court makes the second determination
```

```
1              as to whether or not it supports the
2              proposition for which it's offered.  I think
3              it's a two-step process.
4                   THE COURT:  I'll consider that.  Go
5              ahead.
6              Q.    Now, are you aware that this was not an
7      enticement but was an arranged meeting that had
8      certain involvement of the police in arranging the
9      meeting to take place?
10                  MS. HUDSON:  Objection, Your Honor.
11             He's asking a legal question.
12                  THE COURT:  Sustained.
13                  MR. MILLER:  No, that's a factual
14             question, Your Honor.  Police involvement in
15             setting up the meeting.
16                  MS. HUDSON:  You asked whether it was
17             an enticement.
18                  THE COURT:  I agree.  I sustain the
19             objection.  It's argumentative.
20                  MR. MILLER:  I'll reword it.
21             Q.    Are you aware that the police were
22     involved in setting up the meeting -- local police
23     officers?
24                  MS. HUDSON:  Could we clarify what
25             meeting he's talking about?
```

1           MR. MILLER:  Paragraph one, 15 February

2       2002.

3           MS. HUDSON:  Objection.  It doesn't go

4       to the probable cause.  Paragraph one deals

5       with the subject of a prior conviction of

6       Mr. Bray's and briefly sets forth those facts

7       for the purpose of identifying that there was

8       a minor "A" who had some past history with

9       Mr. Bray of a criminal nature according to

10      Virginia code and according to his prior

11      conviction.  It has nothing to do with --

12      other than as it is in that context with the

13      current allegations of enticement that have

14      more to do with Attachment C to the

15      affidavit.

16          MR. MILLER:  Your Honor, that's

17      argument.  The affidavit in its own words

18      says what the purpose -- how the meeting came

19      about, and it talks about how the meeting

20      came about.

21          THE COURT:  Answer the question.

22      Q.   Do you know whether or not local law

23  enforcement were involved in setting up this

24  meeting?

25      A.   When you say were involved, I --

United States v. James Daniel Bray                November 21, 2002

```
 1          Q.     In arranging it to take place.

 2          A.     I don't believe that, no.

 3          Q.     Okay.  Now, are you aware -- your

 4     knowledge on this information is garnered from

 5     police reports and investigative reports of others

 6     that you read?

 7          A.     Not totally, no.

 8          Q.     Regarding the incidents of 15

 9     February 2002 is it based on police reports and

10     incident reports and interviews with officers?

11          A.     Not totally, no.

12          Q.     Were you present?

13          A.     No.

14          Q.     Other than interviews with the officers

15     and police reports since you weren't present, did

16     you have occasion to observe photographs that the

17     police took of the scene right after their entry?

18          A.     No, I did not.

19          Q.     So have you seen any -- and by

20     photographs I will for the record mean also any

21     videos or still photographs.

22               MS. HUDSON:  Objection, Your Honor.

23               MR. MILLER:  Basis of his knowledge,

24          Your Honor, that's what I'm getting to.

25               MS. HUDSON:  Your Honor, I think a
```

```
 1          question could be asked, but I think the
 2          breadth and the detail of this question is
 3          objectionable.
 4                THE COURT:  Well, the fact that he
 5          wants to detail it in that way, he is
 6          examining this witness.  I overrule the
 7          objection.  Answer the question to the best
 8          of your knowledge.
 9          A.    I did not see any videotapes.
10          Q.    Did you see any photographs?
11          A.    No, I did not.
12          Q.    Okay.  What is the other source of your
13     information if it's not personal knowledge or
14     based on information from officers, because you
15     indicate that --
16                THE COURT:  Why don't you just ask the
17          question?
18          Q.    Okay.  What is your other basis of
19     information?
20          A.    It's also from the victim's family.
21     It's also from other law enforcement officers.
22          Q.    So law enforcement officers and the --
23     by the family, do you mean the parents of "A?"
24          A.    Yes.
25          Q.    Now, there is mention in the bottom of
```

1    this paragraph of a seizure of computers and

2    diskettes, et cetera.  Were you involved in that

3    seizure or is that based on records that you

4    reviewed?

5        A.    That seizure relates to the Virginia

6    search warrant that was executed at that time.

7        Q.    Okay.  Now, you work with the -- for

8    the record, you work with the Attorney General's

9    office of the Commonwealth of Virginia?

10       A.    That's correct.

11       Q.    And this warrant to which you make

12   reference is a state search warrant issued by a

13   state circuit court judge or a state magistrate,

14   do you know -- if you know?

15       A.    I believe it was a magistrate.

16       Q.    And was it a magistrate in the

17   jurisdiction in which the motel occurred; isn't

18   that correct?

19            MS. HUDSON:  Your Honor, we will

20            stipulate this was a state case.  Everything

21            about it was a state case.

22            MR. MILLER:  I'm laying a foundation

23            for another proposition.  I need to get the

24            facts.

25            THE COURT:  What's the proposition?

```
 1              MR. MILLER:  I want to establish the
 2         facts.
 3              THE COURT:  No, what's the --
 4              MR. MILLER:  Can we approach the bench
 5         so the witness can't hear it?
 6              THE COURT:  What's the proposition?  It
 7         either has to be a legal matter --
 8              MR. MILLER:  It's a legal matter.
 9              THE COURT:  Well, just tell me.
10              MR. MILLER:  That the evidence that --
11         to which they make later reference here would
12         not be admissible.
13              THE COURT:  That's not a basis upon
14         which you can challenge it in this court at
15         this time.  The rules are clear.  Objection
16         sustained.
17         Q.   Were you involved in obtaining this
18    state search warrant?
19         A.   No, I was not.
20         Q.   Were you involved in seizing the items
21    that are mentioned in the bottom of this
22    paragraph?
23         A.   Off the state search warrant, no.
24         Q.   Did they come into your possession at a
25    later time?
```

United States v. James Daniel Bray                    November 21, 2002

```
1          A.    Yes, it did.

2          Q.    And for the record, where is your

3     office?

4          A.    In Richmond.

5          Q.    Okay.  How did they come into your

6     possession?

7               THE COURT:  This is discovery and I'm

8          not going to let you go anymore.  Challenge

9          the probable cause or quit.

10              MR. MILLER:  I am intending to

11         challenge the probable cause.

12              THE COURT:  Yeah, but you're doing it

13         round Robin Hood's barn and I'm just not

14         going to let you go there, Mr. Miller.  It's

15         out of deference to you that I've stayed on

16         task as long as I have.

17         Q.    Now, in February you indicate in

18    paragraph three that you were requested by

19    Detective Garland Mills to provide assistance.  Is

20    that reference to you or is that reference to your

21    office?  In other words, did they say, would you

22    please help us to you individually or was it in

23    reference to your office in a referral?

24         A.    Well, they're one and the same, the

25    office and myself.
```

```
 1              THE COURT:  Makes no difference.   If
 2        you ask another question like that, I'm going
 3        to sit you down.
 4        Q.    In that request, did they provide you
 5   with documents and materials on which you relied
 6   in crafting this affidavit?
 7        A.    Some of the materials may have been
 8   part of it.  I don't know which -- I'd have to
 9   look and parse those out.
10        Q.    Did you after that have interviews to
11   which you made reference in your earlier
12   examination?  In other words, did that occur
13   chronologically before or after this time?
14              MS. HUDSON:  Your Honor, I think the
15        agent has already answered that.  He's
16        answered where he got all the information in
17        the case.
18              THE COURT:  And he doesn't even have to
19        answer that except to the extent as showing
20        that they're credible sources.  They don't
21        have to prove credibility of the particular
22        person.  I don't know where this is heading,
23        but it's only going to last another two or
24        three minutes, Mr. Miller.
25        Q.    In paragraph four, you conclude that
```

1    evidence obtained from Detective Mills disclosed

2    communications, and then you describe it, and you

3    say using electronic mail, America Online

4    Messenger, and e-mail accounts.  That's the

5    conclusion that you give.  What is the factual

6    basis for that conclusion?

7         A.    My examination of that evidence.

8         Q.    When you presented -- did you present

9    this affidavit to the Court for the issuance of

10   the complaint in this case?

11        A.    Yes, I did.

12        Q.    Okay.  And did His Honor have presented

13   the materials that you reviewed for the conclusion

14   in paragraph four at that time?

15        A.    Did I hand him --

16             THE COURT:  You have in front of you

17             the complaint and what was attached to it.

18             You've got what I've got.

19             MR. MILLER:  Okay.  That was the point

20             of the question, Your Honor.

21             THE COURT:  Now, if you're challenging

22             that, that's one thing.  But, Mr. Miller,

23             it's an enigma to me about where you think

24             you're going with this.

25             MR. MILLER:  There's a procedure where

1      there could have been additional testimony

2      recorded in a record not part of this.

3           THE COURT:  That's discovery.  Unless

4      this doesn't show probable cause.

5           MR. MILLER:  This does not show

6      probable cause.

7           THE COURT:  You tell me why.

8           MR. MILLER:  Because under Leon it's a

9      wholly unsupported conclusion and they don't

10     allow it, that's why.  In paragraph four --

11     though there could have been other evidence

12     that could have been presented in another

13     means that might have done that and then I'd

14     need to address that issue.  If there was no

15     other, then that's it for paragraph four.

16     It's a wholly unsupported conclusion.

17          THE COURT:  I don't look at just

18     paragraph four.  I look at the entire

19     complaint and all of the things that were

20     attached to it to determine whether there's

21     probable cause.

22          MR. MILLER:  I understand that, Your

23     Honor, but what I need to deal with is the

24     facts as I get to them in the series to see

25     whether or not there's enough of it that's

production@cavalier-reporting.com
(Fax) 434.975.5400                    Cavalier Reporting, Inc                    www.cavalier-reporting.com
(Direct) 434.293.3300

1          not permissible that leads to a diminution of

2          the probable cause allegation.

3          Q.    Now, in paragraph five, the information

4    that you provided, is that also information that

5    was your conclusion based on your review of

6    someone else's records?

7          A.    That was based on looking at the e-mail

8    account information obtained from the two

9    different sources.

10         Q.    When looking at that e-mail account

11   information in five and a similar e-mail

12   information in paragraph four, had you obtained

13   that by use of a search warrant?

14         A.    No.   That was voluntarily provided.

15         Q.    And did you review that material

16   yourself or is this something that was reported to

17   you secondhand?

18         A.    I reviewed it.

19         Q.    Paragraph six refers to a federal

20   search warrant in the Eastern District of Virginia

21   for a personal computer, et cetera that was

22   obtained on the 10th of April 2002.  Did you at

23   that time get into the hard drive and uncover the

24   communications that are referenced in this

25   application for a complaint?

```
1              MS. HUDSON:  Objection, Your Honor.

2              THE COURT:  What's the basis?

3              MS. HUDSON:  I think that goes to

4         discovery.

5              MR. MILLER:  That goes to bail also,

6         Your Honor, as to when he got the

7         information.  Because I don't -- I think that

8         does go to bail.

9              THE COURT:  Why?

10             MR. MILLER:  Because of timeliness and

11        whether -- and risk factors and other issues

12        that come up under the statute, that's why.

13        And so --

14             THE COURT:  You must be looking at

15        different laws than I look at, or you look at

16        them differently than I do.  I just don't

17        know where you're going and where you're

18        coming from.  It's an enigma to me.  I'm

19        giving you some latitude.  Answer the

20        question.

21        Q.   Is that where you uncovered the

22   electronic communications you reference in your

23   affidavit -- pursuant to that search warrant in

24   paragraph six?

25        A.   No.  There were other -- they were
```

1    coming from two different sources.

2         Q.    Okay.  By that time, did you have the

3    communications that you referenced in your

4    affidavit -- except for the letter that's dated

5    obviously the 30th of August?

6              MS. HUDSON:  Request for clarification.

7         By what time, Your Honor?

8              MR. MILLER:  April the 10th, 2002.

9         Paragraph six, third -- fifth words, top

10        of -- top line.

11             MS. HUDSON:  Same objection from the

12        Government, Your Honor.  I think it goes to

13        discovery.

14             THE COURT:  You're going to have to

15        show me why it's relevant to bail.

16             MR. MILLER:  What did they know and

17        when did they know it is relevant to bail

18        relative to the charges, Your Honor.

19             THE COURT:  I don't get it.  I'm in the

20        zone.  What they knew and when they knew

21        it -- I'm just totally in the ozone when you

22        say that, Mr. Miller.

23             MR. MILLER:  It relates to their

24        assessment of risk.

25             THE COURT:  I could care less about his

```
 1      assessment of risk.  I care about the
 2      pretrial services and everything else about
 3      his background, all of the things that the
 4      Bail Act says.
 5          MR. MILLER:  And the Bail Act deals
 6      with strength of case as an issue which is an
 7      area I'm addressing.  Strength of case is an
 8      issue and whether or not they have engaged in
 9      flagrantly illegal conduct that affects the
10      strength of their case is an issue that I
11      would like to address.
12          THE COURT:  I've never seen that in any
13      of the cases that I've read in 21 years.
14      Well, the Bail Act hasn't been around for 21
15      years, but I've never seen that.
16          MR. MILLER:  Strength of case is under
17      the statute.
18          THE COURT:  Strength of case is there,
19      but whether something is legal or illegal is
20      not something I'm to consider, and that's
21      statutory.
22          MR. MILLER:  It's not something that
23      you're to consider on the question of
24      admissibility of evidence before you, but it
25      is something the Court's entitled to consider
```

United States v. James Daniel Bray                November 21, 2002

```
 1          on the issue of strength of case.  And I have
 2          had cases where clients have gotten bail on
 3          that issue because it was so clear.  And in
 4          some cases it wasn't even known to the
 5          attorney of the United States.
 6               THE COURT:  I can tell you if it's so
 7          clear it would certainly be clear enough to
 8          me.  And this is so fuzzy.
 9               MR. MILLER:  It will be when I argue
10          it, but I need to lay the factual predicate
11          for it.
12               THE COURT:  Go ahead.
13          Q.   Did you at that time have the other
14     communications outside of what you developed from
15     the computer?
16               THE COURT:  I think this is a ruse.  I
17          really think it's a ruse to get discovery.  I
18          so find, and unless you can ask questions
19          that are more articulate and more directed
20          toward the probable cause that's stated in
21          here, I'm going to cut you off and I'm going
22          to sit you down.  I think it is a design to
23          get information that you're not entitled to
24          get on a probable cause hearing.
25               MR. MILLER:  Well, Your Honor --
```

```
 1              THE COURT:  And I'm not criticizing you
 2         for trying to do it.  I just think the jig's
 3         up.
 4              MR. MILLER:  Well, in paragraph seven
 5         they talk about a communication dated
 6         February 3rd, 2002.  If they had that on
 7         April the 10th, that goes to my timeliness
 8         issue, which is a factor that under the code
 9         I have to argue to the Court on the bail
10         question.
11              THE COURT:  Just ask the simple
12         question.
13         Q.    Did you have that February 3rd
14    communication that you reference in paragraph
15    seven when you obtained the search warrant in
16    April as referenced in paragraph six?
17         A.    I'm not certain.
18         Q.    Did you have it around that time, if
19    not exactly on that date?  I'm not trying to pin
20    you down to a calendar date with some kind of
21    trick, but around that time.
22         A.    I don't know.
23         Q.    Would it be fair to say that you had
24    most of the communications by June of 2002 other
25    than the letter of August the 30th?  I'm excluding
```

```
1      that from my question.

2           A.    I don't know if I could say that would

3      be fair to say.

4           Q.    Do you have your notes and your files

5      with you of your investigation?

6           A.    Not all of them.

7           Q.    Do you have some of them?

8           A.    A few of them, yes.

9                 MS. HUDSON:  Objection, Your Honor.

10                THE COURT:  He can answer whether he

11      has them.

12                MS. HUDSON:  Yes, sir, and I'm maybe a

13      little premature.

14                THE COURT:  Maybe so.

15           Q.    Do they reflect writings of yours

16      regarding the evidence that's contained in this

17      affidavit?

18                MS. HUDSON:  Objection, Your Honor.

19                THE COURT:  This is totally discovery.

20                MR. MILLER:  5.1, Your Honor, says I'm

21      entitled to it.

22                THE COURT:  Let's go to 5.1.

23                MR. MILLER:  5.1(e).  And it is

24      discovery, 'cause every time you ask a

25      question you discover something you didn't
```

```
 1        know before -- excuse me, not 5.1(e), 5.1(d),

 2        which references Rule 26 and applies Rule 26.

 3             THE COURT:  Well, Rule 26 are the

 4        statements of the accused.

 5             MR. MILLER:  No, sir.

 6             THE COURT:  Why don't we go there and

 7        read it.

 8             MR. MILLER:  Please.  Thank you.

 9             THE COURT:  What do you say about that,

10        Ms. Hudson?

11             MS. HUDSON:  I'm just through Paragraph

12        A.  As far as I can see, Paragraph A refers

13        to any statement of the witness.  I don't

14        think that Agent Lauziere's notes with regard

15        to -- in the context of the question that

16        Mr. Miller asks will be covered under that

17        rule.  I think if he had testified in a

18        proceeding under oath --

19             THE COURT:  These are all directed

20        toward a witness who is called and has given

21        a statement at a previous time.  It doesn't

22        have to do with this man's field notes.

23             MR. MILLER:  It is Jenks material

24        applied to trials and Jenks material applied

25        to preliminary hearings.  And if he wrote it
```

```
 1          and it's his statement, it's a Jenks Act
 2          statement.  The Jenks Act is not limited to
 3          testimony.  Rule 26 is not limited to
 4          testimony.  And Rule 5.1(d) is not limited to
 5          testimony and they don't say so and the cases
 6          say otherwise.
 7               THE COURT:  I was on the committee when
 8          this rule was amended at least to that
 9          extent.  And my recollection of the
10          discussion of the rules committee was that
11          this dealt with witness statements that would
12          otherwise be producible, that -- not just the
13          Defendant's statements, but witness
14          statements that would be producible either
15          under other provisions of law or the Jenks
16          Act.  And this does not deal with the record
17          of his notes.  They're the statements of any
18          witness that has made a previous statement.
19               MR. MILLER:  No, they -- he's the
20          witness.
21               THE COURT:  Overruled -- I mean I
22          sustain the objection.
23               MR. MILLER:  Just so I make what my
24          position is clear, if I may do that, Your
25          Honor.
```

1          THE COURT:  If he's got a statement of
2    a witness that he is relying on at this time
3    to -- in these proceedings, that's fine.  But
4    he's establishing the overall basis of
5    probable cause.
6          MR. MILLER:  What he's doing is one
7    thing and whether it's establishing probable
8    cause or testifying at trial is not the issue
9    because the rules apply the procedural
10   entitlement to statements in both contexts.
11   So the question before the trier of fact is
12   not the question before the Court at this
13   point in time.  The question before the Court
14   at this point in time is when a person
15   testifies as a witness, which for the record
16   this agent is doing, then statements by that
17   testifying witness, who is this agent, which
18   would fit the Jenks Act, as the Court just
19   correctly observed, are producible under Rule
20   5.1(d) as they would be under 26.
21         MS. HUDSON:  Can we refer to Paragraph
22   F of Rule 26.2, Your Honor, for the
23   definition of a statement, which includes a
24   written statement made by the witness that is
25   signed or --

1          THE COURT:  Exactly.

2          MS. HUDSON:  -- otherwise adopted or

3     approved, a verbatim recital of an old

4     statement made that is recorded.  And three,

5     a statement however taken where there's a

6     transcription made by a witness to a grand

7     jury.  I don't see how his field notes are

8     covered under that definition.

9          MR. MILLER:  They are covered because

10     they are statements of his that he made and

11     which he signed.

12          MS. HUDSON:  We haven't established

13     that anything was signed, Your Honor.

14          MR. MILLER:  Well, I was cut off in the

15     middle of establishing my foundation.

16          MS. HUDSON:  Because I think that --

17          THE COURT:  I don't think it applies to

18     this kind of statement.  I think it applies

19     exactly to what -- and if you read the

20     committee notes to the rules in 1993, that's

21     exactly when I served on the committee and it

22     was clear that they weren't trying to create

23     something other than an opportunity for the

24     person to get a copy of any statements that

25     were made by a witness in the form -- you

1       know, Paragraph F really defines what a

2       statement of a witness is.  So I sustain the

3       objection.  This is not general discovery.  I

4       sustain the objection.

5           MR. MILLER:  Your Honor, just for the

6       record so that I'm clear -- I'm not trying to

7       fight the Court, but I need to make my point.

8           THE COURT:  First case I've had

9       litigated under -- I mean, if what you say is

10      true, I will say this, that it was totally

11      foreign to the thinking of the committee at

12      the time that the rule was amended, because

13      they didn't intend to open this up for

14      general discovery.  What they wanted to do

15      and clearly did do was to make statements

16      that would otherwise be available as set

17      forth in F available at a preliminary

18      examination so that at least they could be

19      cross examined.  And I think you've gone

20      beyond that.

21          MR. MILLER:  Just for the record, Your

22      Honor, the -- a DEA 6 or an FBI 302 fits

23      Jenks Act statements.  And that's what I'm

24      asking for from this agent.  And then there's

25      another issue that I haven't addressed yet

United States v. James Daniel Bray                November 21, 2002

```
 1          that I'd like to.  But that's what I asked
 2          for.
 3                MS. HUDSON:  That's not what Mr. Miller
 4          asked for, Your Honor.  I disagree.
 5                THE COURT:  He sure didn't.
 6                MR. MILLER:  I'm asking for his own
 7          investigative notes, which is what a DEA 6 or
 8          a 302 is.
 9                MS. HUDSON:  Then we disagree with that
10          definition.
11                THE COURT:  I agree with the Government
12          and disagree with Mr. Miller, except to the
13          extent if he'd asked for those particular
14          things it's a different animal.
15          Q.    Do you have signed reports of
16     interviews with witnesses on which you relied in
17     preparing this affidavit?
18                MS. HUDSON:  Objection, Your Honor.
19          He's asking about signed reports of
20          interviews of other witnesses.
21                MR. MILLER:  No, does he have his
22          reports of interviews with witnesses that
23          contain statements of others on which you
24          rely that I would like to have produced for
25          cross examination.
```